WILL OF DARDIS.

*February 19—May 8, 1908.*

*Will: Probate: Stipulations regarding testamentary capacity: Effect.*

Pending proceedings for the probate of a will to which objection had been made on the ground of mental incompetency and un- due influence, all the heirs, next of kin of decedent, and the beneficiaries named in the will entered into a stipulation to the effect that decedent was mentally incompetent, and agreed that probate of the will should be denied; that administration should issue to the proponent; that a distribution different from the one prescribed in the will should be followed, thereby admitting to participation certain heirs whom the testator ex- pressly disinherited. Upon the return day the subscribing witnesses testified to the due execution of the will, the obvious sanity of the testator, and the absence of undue influence. On appeal from an order admitting the will to probate, *held*, that the probate of a will is a proceeding *in rem*, involving considera- tions of public welfare and policy, and while it affects specific individuals it also affects many other interests, including those of decedent, some of which cannot be ascertained in advance, and the instrument should be established regardless of those directly interested, and therefore the foregoing stipulation was not binding on the court.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

The will of James M. Dardis, of Racine county, Wisconsin, was presented for probate by *John T. Lee,* the executor therein named, and notice duly given. The will was made in November, 1904; devised a house and lot to one daughter, and the rest of the property, real and personal, to seven named sons and daughters in equal shares, save that one of them was to have twice as much as each of the others. This bequest omitted three sons, and by another paragraph the testator expressly declared his will that those three sons should take nothing. The will nominated an executor, the proponent, and by the sixth paragraph directed and empowered such executor to sell, and by proper instruments of conveyance to convey, the real estate, other than the house and lot devised to the daughter *Susie,* at such price or prices as might be reasonable in his judgment. Objections were interposed to the probate by seven of the children, including some of the beneficiaries and one at least of the disinherited sons, asserting mental incompetency and undue influence by one Thayer, the husband of the daughter to whom the house and lot was devised. Said objections were filed February 7, 1905. On January 26, 1905, all of the children named in the will, except the son Henry Dardis, who had predeceased his father, unmarried, entered into a stipulation to the following effect:

"We, the undersigned, being all the heirs at law and next of kin of the above-named James M. Dardis, deceased, and all being of full age and under no legal disability, having learned that said Dardis having in his lifetime made a last will and testament bearing date November 21, 1904, and having further learned that said last will has been presented and filed with the county judge of Racine county, Wisconsin, for probate, the hearing of which is set for February 7th inst., do hereby consent, stipulate, and agree that at the time of the making of the said last will and testament the

said James M. Dardis, deceased, was not mentally competent to make the same, being an old man, and for several years prior to the making of said will his mental faculties had become impaired, and in justice to the court and to ourselves we make this stipulation and statement. And we further stipulate and agree that in case the probate of said will is refused, either by virtue of this stipulation or otherwise, letters of administration upon the estate of the said James M. Dardis, deceased, may by the county court for Racine county be issued to *John T. Lee,* of Corliss, Racine county, Wisconsin, being the same person named as executor of the said will, hereby releasing and renouncing our and each of our rights to said administration, hereby waiving the publication of any notice therefor, or the running of any time thereon as required by law and the rules and practice of this court, to the end that, when said administration is granted as aforesaid, it shall have the same force and effect as if done after full publication had been made therefor and the time had run thereon as required by law and the rules and practice of this court. It is stipulated and agreed by and between the heirs of the said James M. Dardis, deceased, as aforesaid, that after all the debts and obligations against said estate are fully satisfied, that any advancement made to any child or children of said deceased shall be deducted and taken from their distributive share of said estate. And it is further stipulated and agreed that *Susie Thayer,* one of the children of the said James M. Dardis, deceased, shall have and receive from said estate, in addition to her distributive share, the sum of fifty dollars, being an advancement made to her father during his lifetime, and also shall have and receive, in addition to her distributive share, the sum of six dollars per week during the weeks she cared for her said father during his last sickness. This stipulation and agreement is made by all the heirs of the said James M. Dardis, deceased, with full power and knowledge of its contents and with the intention and desire to settle said estate quickly and amicably and to avoid litigation, trouble, and expense."

On February 7, 1905, they followed this by another stipulation containing many of the provisions of the former, but also stipulating and agreeing that said instrument be disal-

lowed and the probate thereof by said county court be denied, but giving no reason therefor. This second stipulation had appended to it the following consent by *Lee*, the proponent:

"I, *John T. Lee*, proponent of the instrument mentioned in the foregoing stipulation and agreement and the person named therein as executor, do hereby consent to all and singular the terms of said stipulation, and do consent and agree that said instrument may be disallowed and the probate thereof denied by said county court."

Upon the return day of the notice the subscribing witnesses attended and testified to the making of the will, the obvious sanity of the testator, and his apparent freedom from influence. The county court thereupon admitted the will to probate, adjudged it to be the valid will of the deceased, and appointed *Lee* executor. From that order, or rather the part thereof admitting the will to probate, the daughter Mary Esmond appealed to the circuit court. When the case was reached in circuit court Mary Esmond had died, leaving minor heirs succeeding her. The circuit court tried the subject *de novo*, no evidence to attack the validity of the will being introduced, except said stipulations in circuit court, finding the testator sane and free from undue influence and the formal execution of the will to be in accordance with law, and affirmed the judgment of the county court. From said judgment of affirmance six of the sons and daughters appeal.

For the appellants there was a brief by *Simmons, Nelson & Walker*, and oral argument by *John B. Simmons*.

For the respondents there was a brief by *H. G. Smieding*, attorney for *John T. Lee*, proponent; *Churchill, Bennett & Churchill*, attorneys for *Susie Thayer; Waller & Gittings*, attorneys for heirs of Mary Esmond, deceased; and the cause was argued orally by *Mr. Smieding* and *Mr. W. H. Churchill*.

The following opinion was filed March 10, 1908:

DODGE, J.   The very earnest contention of appellants
that, when all parties to a litigation stipulate or consent to
certain action by the court, such stipulation should be car-
ried into effect is undoubtedly correct as a general proposi-
tion, though obviously with some limitations.   For example,
a court could not be compelled to stultify itself by solemnly
adjudging an absurdity or a falsehood because parties stip-
ulated for such act.   Independently, however, of whether a
court must always solemnly adjudicate a fact agreed on by
all parties in interest, doubtless it should give effect to a stip-
ulation so far as it affects the individual rights of the par-
ties thereto.   It is also doubtless true that parties to any pro-
ceeding, although not all the parties, may by their stipula-
tion or consent preclude themselves individually from setting
up any rights in opposition to such stipulation.   The trou-
ble, however, with appellants' position in this case is that
no stipulation was presented to the court signed by all par-
ties in interest.   The probate of a will is a proceeding *in
rem,* to which all the world are in some sense parties.   Of
course, like any other such proceeding, it also affects specific
individuals, and therefore is *inter partes* as to such individ-
uals.   But in addition to its effect upon the rights either of
the heirs of the alleged testator or of the legatees, the adju-
dication of the question whether a given script is or is not the
will of the decedent may affect many other rights and in-
terests which cannot be ascertained in advance of such ad-
judication.   Thus, for example, any will devising real estate
takes effect at the death of the testator and may, at the mo-
ment of such death, create actual vested rights or liens in
judgment creditors of the devisee.   *Scott v. West,* 63 Wis.
529, 24 N. W. 161, 25 N. W. 18; *In re Will of Langevin,* 45
Minn. 429, 47 N. W. 1133.   Upon probate of the will there
is no opportunity to ascertain whether such rights exist, but

the holders of them are parties to the proceeding in the sense that they are bound by the adjudication by virtue of the general publication of notice. Indeed, even more remote rights may exist. General creditors of legatees may have a right to question the *bona fides* by which such legatees surrender any portion of their property after the right to it becomes vested, and no court in which a litigation to that end might be instituted has any power to pass on the existence and validity of an alleged will; especially would it not have such right after such will had been adjudged no testament by the probate court having that jurisdiction, although proceeding upon a stipulation of certain parties in interest. It is for reasons like these that the courts have uniformly held that the proceeding to probate a will is a proceeding *in rem,* binding all the world, and in which even public welfare and policy is involved. The view that public interest requires that a valid will be established, independently of the wish of those parties specifically named therein, is evinced by various statutes in this state. By sec. 4505, Stats. (1898), it is made a crime to conceal or suppress a will by any person, whether with or without the consent of parties therein named. By secs. 3784, 3785, and 3786, Stats. (1898), a positive duty is imposed both upon the county judge as a public officer, upon the person named as executor in any writing purporting to be a will, and, indeed, on any person having custody of such will, to take steps to bring the question of its validity before the proper probate court; and by sec. 2296, Stats. (1898), the absolute requirement is made that every will of real estate admitted to probate shall, with evidence thereof, be spread upon the public records. All these steps are imposed by law wholly independent of the control of those privately interested. They evince a clear recognition and declaration of the legislature that there is a public policy involved in the establishment of every legally executed will.

Apart from the interest of the public there is also recognized by the courts an interest and right of the testator to have the directions of his will carried into effect, at least upon some subjects. His right is recognized to direct at least the method of management and disposal of his property. after his decease, which courts cannot be compelled to disregard to accommodate the wishes of some or even all parties having pecuniary interest in the property. *Dodge v. Williams,* 46 Wis. 70, 90, 1 N. W. 92, 50 N. W. 1103; *Bussell v. Wright,* 133 Wis. 445, 113 N. W. 644. Whether a will contains any directions of the sort thus protected against modifications by the beneficiaries is a question which can only arise after the probate proceeding is complete and the existence of the will has been established, but, apparently, this will commands a method of sale of the real estate which can be given effect only by its probate.

Counsel for appellants cites us to two decisions apparently holding that a probate court should regard the stipulation of the nominal parties in interest in making its decision: *Stringfellow v. Early,* 15 Tex. Civ. App. 597, 40 S. W. 871; *Lloyd's Estate,* 24 Pa. Co. Ct. Rep. 567. We cannot approve the reasoning of these cases. They are addressed both of them to consideration whether an individual who had stipulated could be heard in court in repudiation of his stipulation, and thus was obscured the considerations which we have above suggested of the possible interest of unknown parties and of the existence of a public policy to protect them. The Texas case is based upon a remark in *Phillips v. Phillips,* 8 Watts, 195, to the effect that the parties in interest before probate might consent to the suppression or destruction of a will; the remark in the latter case being wholly *obiter.* Whether this might be so in Texas or in Pennsylvania, we think, as already stated, there are declared and obvious reasons of public policy in Wisconsin which preclude such a doctrine. This conclusion seems to be supported by

the great weight of authority. *Syme v. Broughton,* 85 N. C. 367; *Hutson v. Sawyer,* 104 N. C. 1, 10 S. E. 85; *In re Will of Young,* 123 N. C. 358, 31 S. E. 626; *Allison v. Smith,* 16 Mich. 405, 415; *People ex rel. Frazer v. Wayne Circuit Judge,* 39 Mich. 198; *In re Valentine's Will,* 93 Wis. 45, 67 N. W. 12; 1 Woerner, Adm'n, § 228; Gary, Prob. Law (3d ed.) § 194.

We conclude that the stipulation in this case could not control the duty which the probate court owed to the public, and perhaps to the testator, to adjudicate as to the legal existence of the propounded document as a will: to establish its status. Hence the judgment is proper in the absence of other grounds of attack.

*By the Court.*—Judgment affirmed.

A motion by the appellants for a rehearing was denied May 8, 1908, and the mandate was amended by adding thereto as follows: "the costs taxed against the appellants in this court to be paid out of the estate."