SIMPSON and others, by guardian *ad litem,* Appellants, vs. CORNISH and others, Respondents.

*October 12, 1927—June 18, 1928.*

126

For the appellants the cause was submitted on the briefs of *George W. Taylor* of Kenosha, attorney, and *Robert Bachrach* and *Walter H. Moses,* both of Chicago, of counsel.

For the respondents there was a brief by *Randall, Cava-*

*nagh & Mittlestaed* of Kenosha, attorneys for Margaret Windorf, and *Howard P. Castle* of Chicago, attorney for Henry J. Lageschulte, and *Simmons, Walker & Wratten* of Racine, of counsel, and oral argument by *John B. Simmons* and *Clifford E. Randall.*

The following opinion was filed February 7, 1928:

DOERFLER, J. While the demurrers interposed to the answers of the defendants Windorf and Lageschulte are such as are known by the common law as special demurrers, and recognized as such under the Illinois practice, they have no standing under our Wisconsin statutes, and if they constitute demurrers at all under our practice they must be deemed general demurrers, to the same intent and purpose as though the plaintiffs had pleaded general demurrers by alleging that the answers do not contain facts sufficient to constitute a defense to plaintiffs' cause of action, even though constructively admitted as true.

It is contended by plaintiffs' counsel that as to the answer of the defendant Lageschulte the pleading is insufficient to show that Lageschulte was a *bona fide* purchaser; that in order to properly plead a *bona fide* purchase by such defendant it must be alleged not only that he purchased for a valuable consideration without notice of the existence of a will at the time of the purchase, but the consideration and the nature thereof must be specifically set forth. If this be a necessary requisite to be complied with by the pleader, it must be admitted that the pleading in the answer on this branch of the subject is defective, and that the pleading in effect amounts only to a conclusion of the pleader, and is not admitted under the demurrer. The term *"bona fide* purchaser" is one well known in the law. Such a purchaser is defined by the text-books and the reference books, and is generally recognized in the law in every jurisdiction. But sec. 263.43 of our Statutes is expressly designed to meet such

a situation.   If the pleader desired a more specific allegation for his information, under the statute immediately above referred to he could have readily obtained the desired relief by a motion to make more definite and certain.   This he has failed to do, and having demurred, the allegation must be deemed sufficient.   See the following cases cited in the brief of the answering defendants:  *Wilcox v. Scallon,* 133 Wis. 521, 113 N. W. 948; *Darlington v. J. L. Gates Land Co.* 142 Wis. 198, 125 N. W. 456; *Murphy v. Interlake P. & P. Co.* 156 Wis. 9, 145 N. W. 193; also cases under the head of "Pleadings," cited in 5 Callaghan's Wisconsin Digest, §§ 264, 277.   See, also, Statutes of Wisconsin for the year 1925, sec. 263.27, which provides:  "In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed, with a view to substantial justice between the parties."

Pleadings under our Code have undergone a very decided and marked change.   Under the practice which prevailed at an early date in the judicial history of Wisconsin, much valuable time and effort were wasted by the interposition of mere technical objections, and not only was there a waste of time and effort, but also much unnecessary expense.   A strict compliance with the Code serves the purpose of promoting the speedy administration of justice.   However, it is not intended by the legislature that a pleader should be denied information which may be necessary and to which he should be entitled in order to be apprised of the essential facts upon which a party relies, and in order that such information, where the pleading is general, may be obtained, sec. 263.43 of the Statutes was enacted.   We are therefore of the opinion that the pleading contained in the answer attacked upon this branch of the case by a demurrer is sufficient, no motion to make more definite and certain having been made.

Plaintiffs' counsel further contend that inasmuch as the

answers of the defendants Windorf and Lageschulte allege that Eureka Belle Anderson took title from her brothers and sisters by quitclaim deeds, conveying as children and heirs at law of Robert Simpson, deceased, they cannot be regarded as *bona fide* purchasers, notwithstanding the allegation in the answers that Mrs. Anderson executed to Mrs. Windorf a mortgage which warranted her title to the property. It has, however, been held by this court that a grantee under a quitclaim deed who purchases in good faith, without notice, and for a valuable consideration is a *bona fide* purchaser. *Cutler v. James,* 64 Wis. 173, 24 N. W. 874; *Olmsted v. McCrory,* 158 Wis. 323, 148 N. W. 871. This has also been held by the supreme court of the United States in *Moelle v. Sherwood,* 148 U. S. 21, 13 Sup. Ct. 426, and in *U. S. v. California & Oregon Land Co.* 148 U. S. 31, 46, 13 Sup. Ct. 458. In the *Moelle Case, supra,* the court said:

"The doctrine expressed in many cases that the grantee in a quitclaim deed cannot be treated as a *bona fide* purchaser does not seem to rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, that the grantor merely releases to the grantee his claim, whatever it may be, without any warranty of its value, or only passes whatever interest he may have at the time, indicates that there may be other and outstanding claims or interests which may possibly affect the title of the property, and therefore it is said that the grantee, in accepting a conveyance of that kind, cannot be a *bona fide* purchaser and entitled to protection as such; and that he is in fact thus notified by his grantor that there may be some defect in his title and he must take it at his risk. This assumption we do not think justified by the language of such deeds or the general opinion of conveyancers. . . . There is in this country no difference in their efficacy and operative force between conveyances in the form of release and quitclaim and those in the form of grant, bargain, and sale." Continuing, the opinion says: "The character of *bona fide* purchaser must depend upon attending circumstances or proof as to the transaction, and does not arise, as often, though, we think, inadvertently,

said, either from the form of the conveyance or the presence or the absence of any accompanying warranty."

Plaintiffs' counsel also contend (and this has reference to the title acquired by Lageschulte) that a grantee by warranty deed cannot claim the protection of a *bona fide* purchaser where the grantor has acquired title by a quitclaim deed or where a quitclaim deed appears in his previous chain of title. This proposition is supported in some jurisdictions, but has been adversely ruled by the supreme court of the United States in the case of *U. S. v. California & Oregon Land Co., supra.* In the opinion in the *California & Oregon Land Co. Case* the following quotation from the case of *Boone v. Chiles,* 10 Pet. (35 U. S.) 177, 210, is quoted with approval:

"This leads to the reason for protecting an innocent purchaser, holding the legal title, against one who has the prior equity; a court of equity can act only on the conscience of a party; if he has done nothing that taints it, no demand can attach upon it, so as to give any jurisdiction. . . . Strong as a plaintiff's equity may be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and paying a valuable consideration, without notice of any defect in it, or adverse claim to it."

In further considering the question here involved, and in speaking of the holding of some courts to the effect that where a quitclaim deed appears in the chain of title of one who purchases by warranty deed the purchaser cannot be considered a *bona fide* purchaser and be accorded the protection of a *bona fide* purchaser, the opinion continues:

"And this is certainly a most reasonable limitation, because the rule is obviously, at the best, arbitrary and technical; for a party who receives a quitclaim deed may act in the utmost good faith, and in fact be ignorant of any defect in the title, and this, although he has made the most complete and painstaking investigation, and only takes the quitclaim deed because the grantor, for expressed and satisfactory

reasons, declines to give a warranty. It would be unfortunate, in view of the fact that in so many chains of title there are found quitclaim deeds, to extend a purely arbitrary rule so as to make the fact of such a deed notice of any prior defect in the title."

The rule thus announced by the federal supreme court is an equitable rule, and it is based upon sound logic. It is a rule that should be recognized by every court of equity. It is born out of the necessity of the situation, and has a powerful tendency to settle titles which but for this rule would be the subject of infinite litigation. Whether or not a purchaser is a *bona fide* purchaser should present merely a question of fact, and justice and equity can be done in each particular case as it arises, when the proof is introduced and submitted. We approve of the rule as above laid down by the federal supreme court, and adopt it as our holding in this state.

Plaintiffs' counsel take the position that when the will was finally admitted in the probate court of Cook county, and when a duly authenticated copy of such will and the probate thereof were recorded in the office of the register of deeds for Kenosha county (in which county the farm in dispute herein is situated), the record title of the plaintiffs herein became complete and binding upon all of the parties. Counsel for the defendants Windorf and Lageschulte contend that the decree of the probate court of Cook county, while binding upon all of the parties who appeared in the proceedings in that court, with respect to the property situated in the state of Illinois, is not binding upon counsel's clients, for the reason that the probate court of Cook county never had obtained jurisdiction over them. In this behalf it is argued that prior to the time when the motion was made in the probate court of Cook county for a rehearing on the application to prove the last will and testament of Robert Simpson, deceased, and for an order setting aside the court's denial to

admit the will to probate, the defendants Windorf and Lageschulte had become interested in the Kenosha farm, Mrs. Windorf having loaned the sum of $10,000 upon such farm, taking as security therefor a mortgage thereon executed by Eureka Belle Anderson, and the defendant Lageschulte having purchased said farm in good faith and for a valuable consideration from said Eureka Belle Anderson, subject to said mortgage, and that, no notice of the proceedings with reference to the motion for a rehearing or of any subsequent proceedings thereto having been given to these defendants, the probate court of Cook county acquired no jurisdiction over them; and that the final decree of such probate court is therefore absolutely void as to them.

Here it must be remembered that the infant plaintiffs are not heirs at law of the deceased Robert Simpson, but are grandchildren, and that their sole claim to the Kenosha county property arises out of the provisions of the last will and testament of said Robert Simpson, deceased. When the supreme court of Illinois, in the case of *Simpson v. Anderson,* reported in 305 Ill. 172, 137 N. E. 88, affirmed the order of the circuit court of Cook county sustaining the will, that court also observed that Robert W. Simpson, one of the children and heirs at law of the testator, had died pending the proceedings in the courts of Illinois for the probate of the will, and that minor heirs outside of the plaintiffs herein had not been made parties so that their interests might be protected. The court ordered that, before admitting the will to probate, such unrepresented minors be brought into the proceedings. It was, however, subsequently ascertained that these minor heirs at law of the deceased, Robert W. Simpson, had received proper notice and had been brought into the proceedings, which avoided the necessity of any other proceedings in that behalf.

Counsel for the defendants Windorf and Lageschulte, in view of the direction contained in the opinion of the supreme

court of Illinois, argue that inasmuch as such court held that it was necessary that the minor heirs at law who had become interested in the estate of the testator upon the death of their father had to be made parties, it was likewise necessary that the defendants Windorf and Lageschulte, who became interested, respectively, as mortgagee and owner of the property, be made parties. We think this view taken by defendants' counsel is not tenable. A reading of the opinion in the *Anderson Case* last referred to will make clear the fact that it was considered necessary that the minors be brought in because their father had died, and that they, being successors of their father's interest, were necessary parties to protect the same.

The vital question, therefore, to determine consists of whether or not in the proceedings for the probate of the will in the domiciliary court it was necessary, on the application to set aside the order of the Cook county probate court denying admission to probate of the will of the testator, and for a rehearing, to give notice to the defendants herein of such proceedings, in order that the court might acquire jurisdiction over them. We think this question is definitely determined by the Illinois statutes and by the construction given such statutes by the supreme court of the state of Illinois. Par. 25 of ch. 148. of Cahill's Revised Statutes of Illinois for the year 1927 reads as follows:

"25. *Petition to be filed—Notice.* Section 1. That before any will shall be admitted to probate the person desiring to have the same probated shall file a petition in the probate court of the proper county, asking that said will be admitted to probate, which petition shall state the time and place of the death of the testator and the place of his residence at the time of his death, also the names of all the heirs at law, legatees and devisees with the place of residence of each, when known, and when unknown the petition shall so state, and the said petition shall be verified by the affidavit of the petitioner. And thereupon the clerk of said county court shall send by mail to each of said parties a copy of said petition, within

five days after the filing thereof, and not less than twenty days prior to the hearing on said petition. And in case the postoffice address of any of said parties is not shown by the said petition, then publication shall be made for at least three successive weeks before the day set for the hearing in a newspaper of general circulation, published in the county where said will is to be offered for probate, which publication notice shall contain the name of the testator, the heirs at law, legatees and devisees, when known, the time and place where said will is to be offered for probate; provided, that in case such a petition is not filed and a will has been deposited in said county court for the space of ten days, then it shall be the duty of the county court to proceed to probate said will without petition being filed, but only after having caused publication and notice of the intention to probate said will to be given to the parties in interest as to the court may seem proper: and provided, further, that if, on the presentation of such petition, all of the heirs and legatees of such testator shall personally appear in court or, in case they are of legal age and under no disability, shall file in writing their appearance and waiver of notice, then, such will may be admitted to probate without notice. If any heir, legatee or devisee shall be a minor the petition shall set forth the fact of such minority and a guardian *ad litem* shall be appointed by the court for such minor. In event there are unknown heirs, devisees and legatees and it shall appear after the probate of a will that any of said unknown heirs, devisees and legatees was a minor at the time such will was admitted to probate, then the fact that no guardian *ad litem* for such minor was appointed shall not invalidate the probate of such will.''

It will be observed, first, that the petition for probate shall state the time and place of the death of the testator, the place of his residence at the time of his death, and also the names of all of the *heirs at law, legatees and devisees,* with the place of residence of each, when known, etc. The statute then proceeds and requires the clerk of the county court to send by mail to each of said parties a copy of said petition within a certain period of time. It then also provides that upon the presentation of such petition, if all of the heirs,

devisees, and legatees of such testator shall personally appear in court, or, in case that they are of legal age and under no disability, shall file in writing their appearance and waiver of notice, then such will may be admitted to probate without notice.

The Illinois statute clearly does not contemplate that any notice whatsoever shall be required to be given to the purchaser of property from an heir or to the holder of a mortgage executed by an heir. As the proceedings in probate are purely statutory, the statute itself determines the necessity of notice and the parties required to be notified. The object of requiring notice is to afford an opportunity to those interested as devisees or legatees under the will, and those who may be heirs at law, to appear and protect their interests upon the hearing; and if under the provisions of the statute the parties above indicated can waive notice and consent to the probate of the will, then it logically follows that they, and they alone, are the ones who have a right to insist upon notice.

It is a rule in equity that all parties who have an interest in the subject matter of the litigation must be made parties, so that the final decree of the court may fully pass upon and dispose of their rights, and in order that a multiplicity of suits may be avoided and that justice may be promptly meted out. This, however, is not applicable in a probate proceeding, which, as has already been said, is purely statutory. It is true, however, that these defendants, Windorf and Lageschulte, are vitally interested in the Kenosha farm; that their interests are adverse to the interests of the plaintiffs; that a decree in their favor will deprive the plaintiffs of their right, title, and interest in and to this farm; and that a decree in favor of the plaintiffs may defeat the rights claimed by the defendants. It may also be accepted as a correct legal proposition that if the legislature had seen fit to require all parties, however interested in the subject matter,

to receive notice of the application for the probate of a will, a failure to give notice to parties interested, like the defendants, would confer no jurisdiction over such parties, and they would not be bound by the decree, order, or judgment entered. The statutes of Illinois, however, do afford a certain measure of protection to parties situated like these defendants. Sec. 7 of ch. 148 of the Revised Statutes of Illinois, 1927, provides as follows:

"Section 7. When any will, testament or codicil shall be exhibited in the county court for probate thereof as aforesaid, it shall be the duty of the court to receive the probate of the same without delay, and to grant letters testamentary thereon to the person or persons entitled, and to do all other needful acts to enable the parties concerned to make settlement of the estate at an early day as shall be consistent with the rights of the respective persons interested therein:

"Provided, however, that if any person interested shall within one (1) year after the probate of any such will, testament or codicil in the county court as aforesaid, appear and by his or her bill in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix, or not, which shall be tried by a jury in the circuit court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice in courts of chancery in similar cases; but if no such person shall appear within the time aforesaid, the probate, subject to the provisos hereinafter set forth, shall be forever binding and conclusive on all parties concerned, saving to infants or *non compos mentis,* the like period after the removal of their respective disabilities."

While, therefore, the proof of the will in the first instance, under the statutes of Illinois, rests with the proponent of the will, if the will is not admitted an appeal lies from the order of the probate court to the circuit court, and there the party seeking probate of the will may support the same by any evidence competent to establish a will in chancery; and if the will is admitted to probate it may be subsequently con-

tested as provided by sec. 7 of ch. 148, *supra*. Said sec. 7 therefore affords the only remedy provided by the statute to a person situated like the defendants; and the protection afforded by this provision complies with the full-faith-and-credit clause and the due-process-of-law clause in the federal constitution. It is so held in the case of *Pratt v. Hawley*, 297 Ill. 244, 130 N. E. 793. The subject of notice and the right to notice is there fully and ably discussed. It is said in that case as follows:

"The· reason a proceeding to probate a will in this state is without jurisdiction if notice is not given is only because the statute has made notice a prerequisite to the exercise of the jurisdiction. The statute does not make the proceeding a strictly adversary proceeding in which rights are adjudicated, for the reason that interested parties, although notified and appearing, have no right to introduce evidence. No issue is made between those who assert and those who deny the validity of the will, and the purpose of the proceeding is merely to admit the instrument to probate and record as a will, leaving any one who questions its validity to contest it [under sec. 7 above quoted]. Parties do not have the privilege of trying the same question twice, first on the probate of the will and again on a bill in chancery, but a contestant must resort to his bill in chancery. *Mayer v. Schrenkler*, 286 Ill. 324, 121 N. E. 604."

In the *Hawley Case, supra,* as will appear from the opinion, one Anna E. Yeazell, a resident of Ohio, died, the owner of property in that state and of real and personal property in Illinois. The executor thereafter filed in the county court of the county where the real estate was situated a copy of the will duly authenticated, and an order of the probate court of Ohio admitting the same to probate, together with a petition for the probate of the will in the Illinois county court. Notices were given in accordance with the statutes of Illinois for a hearing, and the will was admitted to probate. One Pratt, who was an heir at law of the testatrix and a devisee under a former will, appealed

to the circuit court, and after a trial in that court the will was again admitted to probate, and the present appeal was taken to the supreme court of Illinois. The appellant received no notice of the application for probate in Ohio, although it was known he resided in Chicago and had lived there for several years. Counsel for the appellant assigned as errors: (1) that the Illinois Uniform Foreign Probate Act is unconstitutional so far as it attempts to make a judicial proceeding in a foreign state conclusive upon a person who is not a party to it; (2) that the probate court of Clark county, Ohio, had no jurisdiction of the appellant to admit the will to probate, and therefore the judgment of that court was void and not entitled to faith and credit; and the third assignment in part is based upon the provisions of the federal constitution which provide that no state shall deprive any person of property without due process of law. The argument as to each of the alleged errors is based on the fact that the Uniform Foreign Probate Act, being sec. 10507, provides for notice only to the widow or husband and next of kin resident in that state. In treating the assignments of error the supreme court of Illinois in its opinion, among other things, says:

"The appellant would have been an heir of the testatrix if no will had been made, because the statute would have given him that right; but the right to take as an heir is statutory, and the rules regulating the right of succession to intestate property are within the control of the state, which may make laws authorizing such succession either by will or by statute regulating descent and distribution. . . . The appellant had no vested right as an heir, but had an interest as an heir adverse to the probate of the will. He also had an interest because he was a devisee in the original will and the devise was taken from him by the first codicil, so that he was interested in establishing the original will and defeating the codicil. *Mosser v. Flake,* 258 Ill. 233, 101 N. E. 540. But so long as the judgment of the Ohio court neither destroyed nor affected any right which the appellant had,

the federal constitution did not secure to him any right to notice of the application for probate and there was no violation of the provision guaranteeing due process of law. Inasmuch as no notice was required to any one, the legislature of Ohio might provide for the probate of a will without notice or upon notice to particular classes of persons, whether within or without the state, and it was not a discrimination against the citizens of other states to provide for notice only to persons residing in the state.

"The Uniform Foreign Probate Act is not unconstitutional because it gives to the judgment of the court of another state admitting the will to probate the same force and effect as the original probate of a domestic will, since such original probate does not affect or destroy any right adverse to the will. The probate court of Clark county [in Ohio] had jurisdiction to admit the will to probate, and the statute of that state does not abridge the privileges or immunities of citizens of other states or deprive any person of property without due process of law."

It seems to us that this decision in the *Hawley Case* fully answers the contention of defendants' counsel wherein they claim that the probate court of Cook county, Illinois, had no jurisdiction of the defendants.

It is insisted by defendants' counsel that their clients, Windorf and Lageschulte, are the owners of the farm in Kenosha county; that Lageschulte acquired title thereto under and pursuant to a warranty deed of the property executed by Eureka Belle Anderson, one of the heirs at law of Robert Simpson, deceased, subject to such Windorf mortgage, said Anderson at the time of the execution of such warranty deed having become the owner also of all of the interests of her brothers and sisters by quitclaim deed in and to said farm. It is also alleged in the answer that Lageschulte subsequently conveyed to Johnson by warranty deed, subject to said mortgage, and Johnson likewise conveyed to Jones, and Jones sold the property on a land contract to Westerhoff; that the parties obligated to pay the mortgage and interest being in default, the defendant Windorf instituted foreclosure pro-

ceedings in the circuit court for Kenosha county, obtained a judgment of foreclosure, and in due course of time the property was sold by the sheriff of Kenosha county under such foreclosure proceedings and bid in by the defendant Windorf for the sum of $12,500; that the sheriff's deed executed pursuant to the judgment of the court was by the court thereafter duly confirmed; and that for a valuable consideration the defendant Windorf executed a declaration in favor of the defendant Lageschulte, under and pursuant to which she acknowledged that she held in trust for him and for his benefit an undivided one-half interest in and to said farm property. It is therefore the claim of the two defendants, Windorf and Lageschulte, that they are now the owners not only of all of the right, title, and interest which Eureka Belle Anderson had at the time she executed the mortgage, but also of all other rights and titles which accrued subsequent thereto.

It must also here be reiterated and borne in mind that the deceased, Robert Simpson, died in June, 1914; that his will was filed in the county court of Cook county for probate on August 4, 1914; and that thereafter such probate court denied admission of said will to probate; that on September 14, 1914, an application was made to said probate court of Cook county for the appointment of an administrator of the estate of said Robert Simpson, deceased, which application was duly granted; that thereafter the three minors, being plaintiffs herein, filed a bill in the circuit court for Cook county to set aside the order denying probate of said alleged will and said grant of letters of administration, and for a hearing *de novo* upon the application for probate of said alleged will, which bill was dismissed by the circuit court for want of equity; that said minors thereupon appealed to the supreme court of the state of Illinois, and the judgment of the circuit court was on April 20, 1916, affirmed; that after the appointment of an administrator in the probate court of Cook county, the administration proceedings con-

tinued in due course, with the result that in the year 1918 the final decree was entered, assigning the estate as intestate property. That while the administration proceedings were pending in the probate court of Cook county, and on or about the 29th day of May, 1916, an application for ancillary administration of the estate of Robert Simpson, deceased, was made and filed in the county court in probate of Kenosha county, and, upon a waiver of all of the heirs at law of said deceased, said county court on the 25th day of July, 1916, by its order determined that said deceased died intestate, and ordered the appointment of an administrator of the estate; and that said administration proceedings were prosecuted to their final conclusion, with the result that the property of the deceased in Wisconsin was by the final decree of said county court in probate in and for Kenosha county assigned and transferred to the said Eureka Belle Anderson, who in the meantime had acquired all of the right, title, and interest in and to such property. That notwithstanding the fact that the decision of the supreme court of the state of Illinois on the first appeal in the matter of the application to probate the will of the deceased, Robert Simpson, was rendered in the year 1916, no further proceedings were had subsequent to such supreme court decision until the year 1919; that prior to the making of the loan of $10,000 by the defendant Windorf to Eureka Belle Anderson, it is alleged that the said Anderson represented to the defendant Windorf that she was the absolute owner of the farm; that the deceased, Robert Simpson, died intestate, and that the probate court of Kenosha county had so found, and ordered the appointment of an administrator, and that such administrator had duly been appointed; that said Windorf at that time had no knowledge or notice whatever of the alleged will of said Robert Simpson, deceased, nor did she have any knowledge whatsoever as to any controversy regarding the title of said real estate. It also appears from the answer that

representations similar to those made to the defendant Windorf were subsequently made to the defendant Lageschulte.

From the situation thus briefly presented, defendants' counsel argue that their clients are *bona fide* purchasers of the Kenosha farm; that they purchased for a valuable consideration, without notice of any infirmity in the title or of the existence of a will, or of any adverse claims whatsoever; and that they are entitled to the protection of a court of equity. We think it must be generally conceded that this claim of the defendants constitutes an issue which is not only interesting, but of great importance,—important on account of the vast effect that a decision may have upon real-estate titles in this state.

There is no provision in the statutes which limits the time within which a will can be presented for probate in this state. The attention of the legislatures of some of the states in the Union has been directed to the complicated situations as to titles which may arise where no time limit is fixed during which a will may be presented for probate, and in consequence thereof varying statutes of limitations have been passed. In this state, however, where a disposition by will has been held to be a sacred right, guaranteed by the constitution, as was held in *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; and *Will of Dardis,* 135 Wis. 457, 115 N. W. 332, there exists no statute of limitations whatsoever. So that under the law as it exists in this state, regardless of the lapse of time, and even of the distribution of estates by courts of competent jurisdiction as intestate estates, if it subsequently appears that the deceased left a will, all intestate distributions will come to naught and must be declared ineffective as to all distributees, leaving open solely the question of whether or not *bona fide* purchasers of property for value and without notice shall be protected as against the beneficiaries under a will.

In Kentucky, where a statute of limitations of ten years is in effect, as it appears from the decision in the case of *Reid's Adm'r v. Benge,* 112 Ky. 810, 66 S. W. 997, the deceased, T. T. Reid, died leaving as his sole heir at law his father. The latter went into possession of the premises and mortgaged the same for the sum of $600. Upon default in the payment of the mortgage and interest, foreclosure proceedings were begun, and the brothers and sisters of the deceased in their answer pleaded that the deceased died testate; that his will was probated, and that under said will the father received one quarter only of the land, the remaining three quarters being divided between the brothers and sisters of T. T. Reid. It was established in the case that the mortgagee was ignorant of the will until it was probated, which was five years after the execution of the mortgage. It was in that case held (and we think correctly) that upon the probate of the will the title to the property devised passed to the devisee as of the date of the death of the testator. Such is also the law in Wisconsin, and, we believe, generally. The decision is an interesting one, and is largely relied upon by the learned counsel for the plaintiffs herein. The opinion, in conclusion, says that "Appellants have not been divested in any way of their legal title to the three fourths of the land devised by T. T. Reid, and, not having been divested, it is superior to appellee's mortgage. . . ." It was there held that inasmuch as a one-quarter interest in the land had actually been devised to the father in the will, such one-quarter interest was alone subject to the lien of the mortgage. So that it will appear that even where statutes are in existence like in the state of Kentucky, the adoption of a doctrine like the one in that state is liable to produce great hardship and to result in injustice.

In dealing with this question we must recognize that human beings are not omnipotent, omnipresent, or omniscient; that they are possessed of the ordinary frailties of mankind; that

when a man dies leaving an estate, public policy requires that
there be a reasonably prompt administration thereof. This
is so because the title to all property in estates passes to a
devisee, legatee, or heir subject to the payment of certain
obligations, such as funeral expenses, expenses of administra-
tion, and claims of creditors. The only property not being so
subject is that which is expressly exempted by law. We also
can take cognizance of what we deem to be a fact, that the
ordinary testator does not publish to his friends or to the
world the fact that he has made a will, and he is particularly
indisposed to make known the specific provisions of a will
and to denominate who his beneficiaries therein may be.
It also frequently occurs that instead of filing a will with the
county judge, as may be done in this state, or depositing it
in some bank or trust company, or in a safety-deposit box in
his home, a testator, in order to avoid a disclosure of its
contents, will frequently hide the will in some secret recess
difficult to discover; and so it oftentimes happens that not-
withstanding the fact that a person dies testate, his will is
either never found or is not discovered until after the lapse of
many years. In the meantime pressing claims against the
deceased require some prompt action. Furthermore, allow-
ances for the support of minors and widows must be made
by the court, and so when, after diligent and vigorous search
and inquiry, it appears that no will is discoverable, courts
entertain (and rightly so) the granting of a petition for
letters of administration.

It must also be conceded that the administration of an in-
testate estate ordinarily consumes the greater portion of one
year, and that in some instances it requires a period of two
or more years. Included in the estate there may be consider-
able property, which, on account of economic or other condi-
tions, may require some disposition. If the law in vogue in
Kentucky, as appears from the *Reid Case, supra,* or in North
Carolina or Alabama, were adopted in this state, no pur-

chaser of property from one whose estate is administered as intestate will ever be secure, nor can a lender of money secured by a real-estate mortgage upon such property feel assured that his loan will ever be repaid, because in the course of years it may be revealed that the deceased actually died testate.

Sec. 311.01 of the Statutes is entitled "Administration, when granted." Sec. 311.12 is entitled "When administration revoked." This section provides that when administration shall have been granted on the estate of any deceased person as intestate, and a will of such deceased person shall be duly proved and admitted to probate, letters of administration shall be *revoked* by order of the proper court, *and the powers of the administrator shall cease,* and he shall thereupon render an account of his administration within such time as the court shall direct. Sec. 311.13 is entitled "Power of executor on revocation." It provides that upon such revocation the executor shall be entitled to all of the goods, chattels, and credits of the deceased remaining unadministered. Sec. 311.14 is entitled "Effect of revocation," and reads: "All acts of an executor or administrator as such, before the revocation of his letters testamentary or of administration, shall be as valid to all intents and purposes as if such executor or administrator had continued lawfully to execute the duties of his trust."

A careful reading of secs. 311.01, 311.12, and 311.13, Stats., demonstrates that the probate of a will after the appointment of an administrator does not invalidate any official act of the administrator, nor is the jurisdiction of the court administering the estate up to that time questioned. If sec. 311.14 of the Statutes had not been enacted at all, we feel that a proper construction of secs. 311.01, 311.12, and 311.13, when considered together, would lead to the result accomplished by sec. 311.14; in fact, sec. 311.14 amounts to a legislative construction of the other three sections of the statutes. Said sec. 311.14 is a mere declaratory

statute, and is confined to acts of administrators and executors during the period of administration, but does not cover titles of *bona fide* purchasers derived from devisees after the probate of a will, or of heirs after the adjudication of intestacy; and the rights of *bona fide* purchasers from devisees and heirs under the circumstances above referred to are governed by the common law upon the subject. There exists, therefore, no basis for the contention of plaintiffs' counsel that under the Wisconsin law the only *bona fide* purchasers are those who secure their title pursuant to official acts of executors or administrators. We believe it is the law that a *bona fide* purchaser who relies upon official acts of a court having jurisdiction of the subject matter will be protected in his title and in his purchase, for if it were not so, the courts, representing the judicial system, would be instrumental in committing a fraud, to the great detriment of one who relies upon its order or decree. A number of cases are referred to in the brief of defendants' counsel where *bona fide* purchasers from devisees under a will having been admitted to probate, receive protection as such, notwithstanding the subsequent probate of a later will or the setting aside of the probate and the appointment of an administrator. Among these cases are *Newbern v. Leigh,* 184 N. C. 166, 113 S. E. 674; *Thompson v. Samson,* 64 Cal. 330, 30 Pac. 980; *Reaves v. Hager,* 101 Tenn. 712, 50 S. W. 760.

It is argued, however, by plaintiffs' counsel that there is a vital distinction between a purchaser from a devisee after the probate of a will and a purchase made from an heir after an adjudication of intestacy. It is argued that the rights of a devisee made in a will become fixed upon the probate of the will (subject only to modification or annulment on appeal) and relate back to the time of the death of the testator; that the purchaser, however, from an heir, even though the purchaser be a *bona fide* one, presents an entirely different situation; that upon the death of the deceased the title immediately vests in the heir or heirs, and that no judicial act is neces-

sary to establish their title, but that such title results by operation of law, under the statutes of descent. Clearly the title in the one instance passes under entirely different circumstances than in the other. But it seems to us that the distinction, in so far as the issue on this branch of the case is concerned, is not based upon a difference in principle. While in case of testacy reliance is placed by the purchaser on the order or decree of probate admitting the will, in the case of intestacy reliance is placed, as in the instant case, upon the adjudication of intestacy. In either case the purchaser is protected, because he relied upon a judicial determination of a court of competent jurisdiction.

That the common-law rule is broader than that claimed by plaintiffs' counsel, whereby they confine the protection of a *bona fide* purchaser only to cases where he relied upon the official act of an administrator or executor, is demonstrated by Woerner, an eminent authority on administration law, in his treatise on the American Law of Administration (3d ed.), in vol. 2, pp. 893, 894, § 274. It is there said:

"So, also, the discovery of a will will not make void letters of administration granted generally; but until revoked all persons acting in good faith with the administrator will be protected. The letters of administration will of course be revoked on probate of the will, and prior acts of the court inconsistent with administration under the will will be revoked in so far as rights have not accrued to persons acting in good faith, but not upon the principle that such acts were void for lack of jurisdiction. (Citing *Perkins v. Owen,* 123 Wis. 238, 101 N. W. 415.) Nor will a sale or prior decree of distribution already made effective, be thereby annulled. But the distinction must be remembered that such protection is extended only in case of reliance on official acts of administration, not to persons claiming under individual acts of supposed heirs, or supposed devisees, whose rights are cut out by the subsequent discovery and probate of a will, or annulment of a will theretofore admitted to probate."

It will be noted that upon the probate of a will letters of administration will be revoked, but not upon the theory that

the official acts of the administrator are without jurisdiction. It is there also said that persons relying upon official acts of administration will receive protection, and this means, as we construe it, not merely the acts of administrators or executors, but orders and decrees of the court, upon which a purchaser relies. Under a proper construction of this quotation from Woerner, the distinction is made clear between acts of a supposed heir or a supposed devisee and one whose rights have been established either by official acts of administration or by a decree of distribution. In the instant case there was a final decree entered in the probate court of Kenosha county assigning the real estate therein to the assignee of the heirs at law. The answer specifically alleges that Lageschulte purchased the property subsequent to the entry of such decree, and that there was furnished him an abstract of title. From this it must be presumed that such abstract contained all of the proceedings up to and including the final decree in the matter of the estate of the deceased, Robert Simpson. It is also alleged that he relied upon the abstract so furnished. Eureka Belle Anderson transferred the property to Lageschulte subject to the mortgage, which the purchaser assumed, and the subsequent transfers were made under similar conditions. When the property was sold under foreclosure, the purchaser received not only the interest of the mortgagor, but also all the right, title, and interest of those claiming under or through her. The law is stated in 19 Ruling Case Law, 625, as follows:

"The necessary consequence of a decree of foreclosure of mortgaged premises is to merge the interests of the parties to the suit in the decree, and to transfer and vest them in the purchaser at the sale. The title conveyed by such completed foreclosure sale is all the right, title, and interest in and to the mortgaged premises which the mortgagor possessed at the time the mortgage was executed, or which was subsequently acquired by him."

So that the title which the defendants Windorf and Lageschulte finally acquired as *bona fide* purchasers is founded

not only upon the order or decree of intestacy, but also upon the final decree of distribution. Before entering a final decree proof of heirship must be made, and upon this proof is based the final distribution and assignment of the property, and both the heirship so established and the distribution in accordance therewith become presumptive evidence of the facts therein contained. It therefore follows that under the law as stated by Woerner, these answering defendants are entitled to the protection of this court as *bona fide* purchasers.

When an application is made to a probate court for the appointment of an administrator, there is involved, from the very nature of the proceeding, the question of intestacy, and the appointment of an administrator determines the non-existence of a will and that the deceased died intestate. As has been already stated, there is no statute in this state limiting the time when a will may be presented or admitted to probate. It is the policy of the law to encourage the free and unrestricted alienation of property. To hold that a *bona fide* purchaser, under the circumstances in this case, cannot rely upon an adjudication of intestacy or upon a final decree, would have a tendency, for an unlimited time, in effect, to suspend the power of alienation. As has heretofore been said, the wishes of a testator as expressed in his will must be given effect regardless of the time when the will is discovered and probated. A duly executed will may never be discovered, or it may be discovered after the lapse of many, many years. If the rule contended for by plaintiffs' counsel be adopted by this court (and the question is a new one in this jurisdiction), then the title to all property passing under the intestate laws of this state may be involved under a cloud which will effectually restrict its alienation and which will vitally affect the value of the real estate. Laws are created for the benefit of man and for the protection of his property. To afford a *bona fide* purchaser like in the instant case legal protection, will not only result in the adoption of a

just and equitable doctrine as far as individuals and property are concerned, but will also result in a recognition and establishment of a broad public policy.

It is further argued by plaintiffs' counsel that the probate court of Kenosha county had not acquired jurisdiction of the minor plaintiffs and that therefore they are not bound by the order or decree of that court. The Statutes of Wisconsin, on an application for the appointment of an administrator, provide for the giving of personal notice within a limited time prior to the hearing, or notice by publication. Sec. 310.05, however, provides that an administrator may be appointed by consent of all parties interested. The statute, in case of intestacy, clearly does not contemplate that notice shall be given to any one but those who are heirs. The minor plaintiffs were not interested as heirs when the application for letters of administration was made, and their sole interest is based upon the provisions of the will. The statute authorizes the appointment of an administrator by consent, which has the effect of a waiver of notice, and the appointment of an administrator pursuant thereto is founded upon the theory that the deceased died intestate. Under our law a testator has the constitutional right to make effective the provisions of his will. Therefore, when a will is produced and probated, letters of administration are revoked and the will is given the fullest effect, excepting only in such cases where the rights of *bona fide* purchasers have intervened.

Under the quotation from Woerner above set forth, the acts of an executor or administrator before revocation are binding, and the revocation is not based upon the theory that the court had no jurisdiction. We think it would be conceded that if in the instant case the property in question had been sold by the administrator, pursuant to the order of the court, for the benefit of creditors, the purchaser would receive good title, and that the court had jurisdiction. If it

had jurisdiction under those circumstances, it also had jurisdiction to adjudicate in intestacy and to establish heirship and to enter a final decree.

If the statute on notice had, for instance, contemplated personal service upon legatees or devisees of a will, how could such notice be made effective where the will had not been discovered? It is not often that legatees or devisees become aware that they have been denominated as such in a will before the death of a testator, and in innumerable cases after his death even the closest relatives of the deceased have no knowledge or information that he left a will; and certainly in all cases where the will has not been found, personal service could not be made on the legatees or devisees. At any rate, such service would be based upon mere speculation. What has been said with respect to personal service also applies to notice given by publication. But when it comes to an intestate estate the heirs are readily ascertained, and it is for this reason that they must either receive actual or constructive notice, or consent to the appointment of an administrator, or expressly waive notice. Therefore the practice has arisen, and is generally observed where application is made for the appointment of an administrator, in order to save time and expense, that the court proceeds upon a consent or waiver. This practice has been pursued, to the writer's knowledge, quite generally for a period of over forty years, and we believe it to be in harmony with a proper construction of the statutes.

On January 23, 1923, the will of the deceased, Robert Simpson, was admitted to probate in the probate court of Cook county, Illinois, and an authenticated copy thereof and of the record of its probate was filed in the office of the register of deeds for Kenosha county on the 2d day of December, 1925. As has heretofore been stated in another branch of this opinion, if these answering defendants felt aggrieved at the action of the court in admitting this will to

probate, on account of fraud, undue influence, mental incapacity, etc., their remedy consisted in a bill in chancery in the circuit court of Cook county, Illinois, within a year after the admission of the will to probate. Special attention is called to the provisions of secs. 238.18 and 238.19 of the Statutes. Sec. 238.18 provides:

"No will shall be effectual to pass either real or personal estate unless it shall have been duly proved and allowed in the county court as provided in these statutes, or on appeal in the circuit court or in the supreme court, except as provided in section 238.19; and the probate of a will of real or personal estate as above mentioned shall be conclusive as to its due execution."

It will appear from sec. 238.19 that when the will is admitted to probate in the domiciliary court and a copy of the will and probate thereof, duly authenticated, is recorded in the office of the register of deeds of any county in which such lands are situated, such recording will be as valid and effectual to pass the title to such lands as if such will had been duly proved and allowed by the proper court in the state. See construction of these two statutes in the following cases: *Archer v. Meadows,* 33 Wis. 166; *Parker v. Parker,* 11 Cush. (65 Mass.) 519; 28 Ruling Case Law, p. 376, § 377; 40 Cyc. 1372. In these cases it is held that where the statute uses the expression "due execution" it implies testamentary capacity, lack of undue influence, duress, or fraud, and that the will is genuine and not a forgery, and to this may be added execution in accordance with the law of the domicile. If this were not so, the will of a testator who resides in Illinois and who has property in Wisconsin, Minnesota, Iowa, and some other states, would be subject to contest in all of these states upon the grounds hereinbefore mentioned, with the possible result that in some of these states the will would be admitted to probate, and in others probate would be denied. See opinion in *Estate of Read,* 195 Wis. 128, 217 N. W. 709. The purpose of secs. 238.18

and 238.19 becomes apparent, and no further comment need be indulged in on their meaning and construction.

After the admission of the will to probate in the probate court of Cook county, the heirs at law, feeling aggrieved thereby, began an equitable action in the circuit court for Cook county, under the provisions of the statutes of Illinois known as par. 7 of Cahill's Illinois Revised Statutes (1927), found on page 2504, to set aside the probate on the ground of fraud, undue influence, mental incapacity, etc. This action, as is alleged in the answer, was by the consent and stipulation of the heirs at law and of the minor plaintiffs, by guardian *ad litem,* dismissed, the stipulation providing for a distribution of the property of the deceased in a manner substantially different from that provided in the will. Defendants' counsel argue, under the doctrine established in this court, that such a disposition, being contrary to the provisions of the will, constitutes a fraud, as was held in *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Will of Reynolds,* 151 Wis. 375, 138 N. W. 1019; and *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 135, 159 N. W. 737. The answering defendants in this action were not made parties to the equitable action in the circuit court for Cook county, and it is claimed that the dismissal of the action pursuant to the stipulation deprived these defendants of a right to contest the will. This claim on the part of the defendants is fully met by the decision in the case of *McCreary v. Bartholf,* 305 Ill. 325, 137 N. E. 242.

For the reasons herein stated, the order of the lower court is affirmed.

*By the Court.*—It is so ordered.

ROSENBERRY, J., dissents.

A motion for a rehearing was denied, with $25 costs, on June 18, 1928.