WILL OF DRAHEIM: JAECKELS, Proponent, Respondent, vs. HERTZFELD and others, Contestants, Appellants.

*September 7—October 5, 1954.*

For the appellants there was a brief by *Jack J. Schumacher* of Shawano, attorney, and *Lehner, Lehner & Behling* of Oconto Falls of counsel, and oral argument by *Mr. Schumacher* and *Mr. Adolph P. Lehner.*

For the respondent there was a brief by *Edward J. Hart,* and oral argument by *Mr. Hart* and by *Mr. Wendell Mc-Henry,* both of Waupaca.

BROWN, J.   The appellants' first contention is that upon the filing of the affidavit of prejudice by Paulina on January 19, 1953, Judge SCHELLER lost all jurisdiction, wherefore his subsequent orders are void.   Sec. 253.07 (1) (b), Stats., states that the prejudiced judge "shall thereupon be disqualified to act in relation to that matter;" (c) directs him to request another judge to hold court to decide such matter; (d) provides that the person who files such affidavit of prejudice without five days' notice to the adverse party prior to the hearing may be ordered by the court "to immediately pay to the adverse party" the fees of his witnesses and his attorney's fees of $10.   Further, "Failure to make payment as ordered shall nullify the effect of the affidavit of prejudice."

The effect of these statutory provisions is to modify the immediate and total disqualification of the protested judge prescribed by (b) ; (c) left him jurisdiction to call in another judge; (d) left him jurisdiction to order immediate payment of witness and attorney's fees and in default of such payment restored his general jurisdiction. The immediacy of the payment which may be ordered demonstrates that the order may be made by the judge originally sitting when notice has not been given that the affidavit will be filed. We consider that the statute preserves Judge SCHELLER's jurisdiction to make the order regarding fees and expressly restored all original jurisdiction to him for Paulina's default in compliance.

Appellants argue that although the statute provides fees in favor of the adverse party neither Werner, who was named in the order, nor Jaeckels was an adverse party as contemplated by the statute. Werner was present as Jaeckels' attorney and as a witness to the will. It was he to whom the fees would ultimately be paid and we do not regard it as important that the order, after reciting the capacity in which Werner appeared, directed the fees to be paid to him directly rather than to him through Jaeckels. But, appellants say, even Jaeckels, as a person merely named as executor, is not a party adverse to them in this proceeding. A prospective executor has a real, tangible interest in the probate of a will which nominated him. (We note that such positions are diligently sought by corporations having fiduciary powers.) Parties seeking to prevent his appointment are *ipso facto* adverse if he is properly in the proceeding at all. *Will of Dardis* (1908), 135 Wis. 457, 462, 115 N. W. 332, construes secs. 310.01, 310.02, and 310.03, Stats., then appearing as secs. 3784, 3785, and 3786, inclusive, to *require* the person named as executor to take steps to bring the question of the will's validity before the proper probate court. It is in strict accord with this duty that a person named as executor petitions the court to admit to probate the will which nomi-

nates him. As a proponent he was an adverse party to Paulina who, when she filed the affidavit of prejudice simultaneously filed objections to the will. We conclude that Judge SCHELLER had jurisdiction to make an order for the payment of fees consequent upon the affidavit of prejudice and that there was no infirmity in the order itself which would render it void. The failure of Paulina then to obey the order nullified her affidavit of prejudice and restored to Judge SCHELLER his entire original jurisdiction to determine the questions raised by the petition to admit the will and the objections thereto.

Even so, appellants submit that their joint affidavit of prejudice filed March 6, 1953, deprived the judge of jurisdiction to determine subsequently the questions incident to the admission of the will. They are mistaken in this for the affidavit was not filed in that proceeding but in connection with their petition that Draheim had died intestate and an administration should be granted. The affidavit by its own terms refers only to the petition for administration and recites that the persons who signed it believe they cannot have a fair trial in such matter because of the prejudice of the judge. We consider that it was quite ineffective to impair jurisdiction in the proceeding to determine the validity of the will which was then pending. Moreover, the date set by the court for hearing the petition to prove the will was January 20, 1953, and proceedings were had in that matter on that day. Sec. 253.07 (1) (b), Stats., declares that an affidavit of prejudice may be filed at any time up to and including the day set for hearing. On March 6, 1953, that day was long past.

We note that appellants argue in another connection that Albert Draheim made several wills before the one which they now claim to be void. Obviously, before any petition for administration could be considered by the trial court, it must be determined whether the present will is valid and, if it is not, whether a prior one existed unrevoked. Proceedings to

determine testacy are not to be interrupted or subordinated to proceedings, commenced later, for administration. Nor can we approve appellants' argument that the nonexistence of the church to which a bequest was made and the renunciation of her legacy by Paulina, the only other beneficiary, had the effect of wiping out the will. In *Will of Dardis, supra,* we pointed out that public policy requires the probate court to adjudicate as to the legal existence of the propounded document as a will. The wishes of interested parties for a different distribution must give way to that primary function of the probate court.

The trial court did proceed to an adjudication which found the will valid over the objections of those who would have inherited in an intestacy. Albert Draheim successfully conducted his own affairs up to and later than the date of the will. The evidence that he was competent and not subjected or susceptible to undue influence is so strong and evidence to the contrary so weak that we consider it unnecessary to summarize it. It amply supports the findings of valid execution, testamentary capacity, and freedom from undue influence which the trial court made and the order and judgment based thereon which admitted the will to probate and appointed as executor the person whom the testator nominated in the will.

*By the Court.*—Order affirmed.