CASE 96—ACTION TO ENFORCE A MORTGAGE LIEN—FEB. 28.

# Reid's Admr., &c. v. Benge.

### APPEAL FROM CLAY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. REVERSED.

WILLS—DELAY IN PROBATING—RIGHTS OF PURCHASER FROM HEIR—ESTOPPEL.

Held: 1. A will may be probated at any time within ten years after testator's death.

2. The interest of devisees vested at the instant of testator's death, though the will was not probated for seven years thereafter.

3 Where, a will was not probated for seven years after testator's death, and in the meantime the only heir had taken possession of the land devised, and executed a mortgage thereon, the devisees are not estopped to claim the land as against the mortgagee, as they were ignorant of the existence of the will, and therefore not called upon to speak sooner.

4. The failure of the testator to disclose to some person where his will could be found, so that it might have been probated sooner, can not operate as an estoppel upon the devisees.

JAMES D. BLACK, FOR APPELLANTS.

In March, 188, T. T. Reid died, a bachelor, domiciled in Clay county, about thirty years of age. His will was probated in 1895 in the Clay county court. His father survived him. His mother was dead.

In 1890 his father executed to appellee, E. J. Benge a mortgage on all, or about all, the land decedent owned at his death,

Reid's Admr., &c. v. Benge.

to secure a loan of $600. By his will the testator divided his estate by giving $1,000 to Miss Fannie White, and to his father one-fourth of the residue, and the remaining three-fourths to his brother and sisters, appellants herein.

In 1897 Miss Benge instituted this suit in the Clay circuit court to subject the whole of said land to the payment of her $600 debt. In the meantime the father of testator had taken possession of and squandered the major part of the estate. Appellants resisted the suit, claiming that the father had no right to place the land in lien by mortgage or otherwise, and claimed three-fourths thereof under the will.

The court below adjudged the whole of the land subject to the mortgage.

We contend that only one-fourth of the land was subject to the mortgage, as under the will the father was entitled to one-fourth interest therein, and the remaining three-fourths was devised to appellants.

The will was duly probated within less than ten years after the testator's death, and we claim this is conclusive on all the parties. On the probation of the will the title to the property vested in the devisees named therein. It was no fault of the appellants that the will was not sooner found and probated.

## AUTHORITIES CITED.

Page on Wills, sec. 22; 20 Am. & E. Ency. of Law, note pages 528 and 542; Allen v. Froman, 96 Ky., 313; Kentucky Statutes, sec. 2522.

D K. RAWLINGS, FOR APPELLEE.

T. T. Reid died in 1888 supposed by every one, intestate. Letters of administration were granted and his personal representative qualified, and his father took possession of his entire landed estate. No will was discovered until the fall of 1895. The father continued in the possession of the land until he died and in 1890 while so in possession, borrowed $600 from Miss Benge and executed a mortgage to her, on said land to secure said loan.

The contention of appellee is that she should be protected, and the lower court has so adjudged, basing his decision on an old English statute known as the "East Riding Registry Act" and we submit that the equities of the case demand that this decision be sustained.

OPINION OF THE COURT BY JUDGE WHITE—REVERSING.

In October, 1888, T. T. Reid died in Clay county never having married or had issue. His only heir at law was J. W. Reid, Sr., his father, the mother having died prior to the death of T. T. Reid. After the death of T. T. Reid, his father, as heir at law, took possession of the real estate left by T. T. Reid, containing probably 300 acres. In April, 1890, J. W. Reid, Sr., borrowed of appellee, E. J. Benge, $600, and to secure its repayment executed a mortgage on the tract of land that had formerly been owned by T. T. Reid, and which J. W. Reid, Sr., then thought he had inherited from his son T. T. Reid. This mortgage was properly executed, delivered, and put to record in the proper office. After the execution and delivery of this mortgage to appellee, the mortgagor, J. W. Reid, Sr., died, and administration was had on his estate by J. W. Reid, Jr. The appellee instituted this action to collect her debt of $600 from the estate of J. W. Reid, Sr., and to enforce her mortgage lien on the tract of land. The administrator and heirs at law of J. W. Reid, Sr., were all made parties. To this action certain of the children of J. W. Reid, Sr., brothers and sisters of T. T. Reid, deceased, filed answer, being already parties hereto, and denied that at the date of the execution of the mortgage by J. W. Reid, Sr., to appellee, or at all, the said J. W. Reid, Sr., had title to the land, or that the same ever descended to him from his son T. T. Reid, their brother. They pleaded that at the regular term of the Clay county court in May, 1895, there was produced and probated the will of T. T. Reid, by which will the land mortgaged was devised to them in conjunction with their father, J. W. Reid, Sr.; that is to say, the father was devised one-fourth the land, and the other three-fourths to appellants, his brothers and sisters. Appellants therefore denied appellee's right

to a lien upon the land, at least to the extent of their interest—three-fourths—derived under the will of T. T. Reid. By reply the existence and probate of the will was formally denied. The only proof taken was that of appellee, who, if competent for any purpose established the justness of her claim against J. W. Reid, Sr., which was never an issue, and her entire ignorance of the will of T. T. Reid until it was probated in 1895, more than five years after she had loaned the money to J. W. Reid, Sr., and accepted the mortgage as security. With this proof and the copy of the probated will and orders of the county court the case was submitted for final hearing. The court adjudged to appellee a lien on the whole of the land to satisfy her debt, and decreed a sale thereof, and to reverse that judgment this appeal is prosecuted.

It may be said at the outset that there is no pretense or plea that the devisees (appellants) were guilty of any fraud by suppressing the will, or in fact knew that such paper existed till long after the execution of appellee's mortgage. It seems to be conceded that all parties acted in good faith upon the facts as they knew them. The question, then, presented for our consideration, is: Is the equity of appellee, acquired under the mortgage executed by J. W. Reid, Sr., when all parties believed he was the legal owner by reason of being heir at law, and five years before the discovery of the will of T. T. Reid superior to the legal title of the devisees under the will? It is conceded that no statute of limitation applies to bar appellants' right to recover, for it is well settled in this State that a will may be probated at any time within ten years after the death of the testator. Allen v. Froman, 96 Ky., 313 (16 R., 634) (28 S. W., 497.) The will in the case at bar was probated seven years after testator's death. There is no plea of fraud either in suppressing the will or in

inducing the appellee to part with her money on the faith of the mortgage security by any of the appellants, at least with any knowledge or information of their rights in the land. As we understand the contention of counsel, his position is that by reason of the negligence of testator in so placing his will as not to be found for seven years after his death, though this may not have been actually intended, and by reason of laches of appellants, devisees thereunder, in not producing the will, the appellee has acquired an equitable claim superior to the legal title under the will. By section 16, c. 113, General Statutes, in force at the death of T. T. Reid, it is provided that the will speaks as of the testator's death, unless a contrary intent appear by the will. Alexander v. Waller, 6 Bush, 330. It was held as far back as 1827 in the case of In re Payne's Will, 4 T. B. Mon., 423, that the interest of a devisee vested the instant of testator's death, and was not lost by destruction of the will before probate. This case has never been questioned in this State, so far as we are informed. Applying that rule here, it is clear that at the death of T. T. Reid, in 1888, the appellants, devisees under his will, had a vested estate in his lands, as the will provided. To divest them of this title there must be either conveyance, prescription, or estoppel in some form. It is not pretended that there is a conveyance, or that their right to claim under the will is barred by any statute of limitation. An estoppel is defined by Bouvier to be "the preclusion of a person from asserting a fact by previous conduct inconsistent therewith on his own part or the part of those under whom he claims, or by an adjudication upon his rights which he can not be allowed to call in question." Stephens defines "estoppel:" "A preclusion in law which prevents a man from alleging or denying a fact in consequence of his own previous act, allegation,

Reid's Admr., &c. v. Benge.

or denial of a contrary tenor." Blackstone's definition is: "A special plea in bar, which happens where a man has done some act or executed some deed which precludes him from averring anything to the contrary." It is the foundation of the doctrine of estoppel that the party estopped has designedly so acted or spoken as to induce others to change their position injuriously to themselves; in other words, the doctrine of estoppel is founded on the fraud of the party who is held estopped. But, to be guilty of fraud, a person must knowingly do or say that which is inconsistent with honesty and truth, or, regardless of what the truth may be, induce a person to act. There can be no case found where any person was ever charged with fraud or held to be estopped where he was ignorant of the truth and did no act at all. In the case at bar the devisees under the will of T. T. Reid did nothing, said nothing, and at that time were in entire ignorance of the existence of a will, or that they had any rights in the property. In fact, if there was no will, which they then believed to be the truth, they knew that they had no right, title, or interest in the land  They knew that without a will the land descended to their father, J. W. Reid, Sr.  There can be no act of appellants that could by any rule of law be held to estop them from claiming under the will of T. T. Reid. It may be said that a person may speak a falsehood or act a falsehood, but, if he does no act, and remains silent, he can not be charged with fraud or be estopped without he knew the truth when his non-action or being silent is said to have induced another to act to his own injury. Likewise there can be no estoppel of appellants by reason of the act of the testator in not disclosing to some person the place where his will could be found. He was not called upon to publish the fact that he had made a will for the protection of appellee, for it was some two years after

T. T. Reid's death that appellee had any claim of lien upon the land. Surely, a dead person can not be charged with negligence, or be estopped, or create matters of estoppel by a failure to act after his death; yet this would be the effect of holding that appellants are chargeable with the fact that the will was not found before appellee's mortgage was executed by reason of some act or omission of T. T. Reid. There seems to be a dearth of authority on the exact question here presented. After diligent search learned counsel for appellee finds only one case that approaches the question, and after diligent search by us we have failed to add another. The case found is Chadwick v. Turner, 1 Ch. App., 310. There the court held, under a registration act, that after six months, there being no registration of a will, the devisee would take subject to a mortgage executed by the heir at law. The case cited, coming from such eminent authority, would have great weight with us if it did not depend entirely on an act requiring registration of wills. But that case is not authority in this State for the reason that here we have no law requiring wills to be registered or recorded within any given time. This court has held that a will may be probated at any time till the cause of action to probate is barred by the ten-year statute of limitation. There is no statute requiring wills to be registered or recorded or probated, like there is of conveyances; and in the absence of such statute and in the absence of fraud in suppression or destruction of wills, the devisees therein take the property when the will is probated, which, as we have said, may be at any time within ten years from the testator's death.

We conclude, therefore, that appellants have not been divested in any way of their legal title to the three-fourths of the land devised by T. T. Reid, and, not having been di-

vested, it is superior to appellee's mortgage; wherefore, for the reasons indicated, the judgment is reversed, and cause remanded for judgment, with decree of sale in favor of appellee, Benge, as against one-fourth the land embraced in the mortgage only, and for proceedings consistent herewith.