# Hellard, et al. v. Rockcastle Mining, Lumber & Oil Co.

(Decided March 21, 1913.)

## Appeal from Jackson Circuit Court.

1. Judgment—Failure to Enter—Sufficiency.—The judge having signed a minute on the minute book, "judgment to be entered by the clerk," and the judgment being drawn and put in the papers but never entered by the clerk on the order book or signed by the judge, there is no judgment of the court, and the status of the parties continues as before.

2. Land—Conveyance by Married Women—Failure of Husband to Unite.—A deed made by a married woman in which her husband did not join is void although she made it when she and her husband supposed they had been divorced, no judgment of divorce having been entered.

3. Land—Adverse Possession—Absence of Entry.—There is no adverse possession of a tract of land where the defendant simply has a marked boundry around a larger tract and there is in fact no entry on the land in dispute.

A. W. BAKER for appellants.

C. C. WILLIAMS and J. R. LLEWELLYN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellants brought this suit as the children and heirs of John and Martha Hellard, to recover three tracts of land in Jackson county, containing about 300 acres. The record shows that in 1868 John Hellard owned the land in question and that he occupied it with his family, consisting of his wife and six children, five of whom are the appellants in this action. In 1868, Martha sued John for a divorce and alimony in the Jackson Circuit Court. The divorce suit was compromised by a written agreement signed by John Hellard and Martha Hellard on January 28, 1868, whereby John Hellard agreed that Martha was to have all the lands, absolutely (supposed to contain about 350 acres, Martha then having all the patents for same), and certain specified personal property. She was also to have possession and control of the children. This agreement bore the caption of the case of Martha Hellard v. John Hellard in the Jackson Circuit Court, and concluded with this sentence:

"The parties consent that this be entered as the decree of the court in this suit."

The agreement was filed in the action and bears this endorsement:

"Consent decree; Martha Hellard v. John Hellard. Entered upon the record this the 17th of June, 1868. Filed June 17, 1868.

"J. M. Wood, Clerk."

J. M. Wood was clerk of the Jackson Circuit Court. At the same term of the court, and on motion of the plaintiff, the action was submitted for trial and two days later the circuit court judge made upon the minute book, which he signed, this entry:

"Judgment to be entered by clerk on order book." No further order was ever entered in the case, but there was found among the papers a formal and complete judgment in the handwriting of the penman who drafted the petition, granting the plaintiff a divorce and carrying out the provisions of the written agreement which had theretofore been filed in the case. This judgment, however, was never entered or signed by the judge and bears no endorsement of any kind.

Martha Hellard was re-married to Milton Martin in 1869, and John Hellard was re-married to Elizabanna Angel in 1881. Martha Hellard and her family continued to live upon the farm some three years after her marriage to Martin, when she and Martin left the farm in the possession of the children. In 1882, Martin having died in the meantime, Martha sold the land to Colton; Colton sold it to West in 1887, and he in turn sold it to the appellee, Rockcastle Mining, Lumber & Oil Company, in 1889. John Hellard died in 1898, and Martha, his former wife, died in 1906. In 1912, this action was brought by the surviving five children of John and Martha Hellard to cancel the conveyance from their mother Martha to Colton and the subsequent conveyances from Colton and West; and they further asked that they be adjudged the owners of the land in question.

The proceedings in the divorce case did not dissolve the relation of husband and wife existing between John and Martha Hellard; and as he did not join in her deed to Colton, that deed was void and of no effect. Weber v. Tanner, 23 Ky. L. R. 1107, 64 S. W. 741; Ky. Stave Co. v. Page, 125 S. W. 172. While it may be said that the effect of the written agreement, which was signed and filed in the divorce suit as a basis

for a subsequent judgment to be entered fixing their property rights, vested Martha Hellard with the equitable title to the lands, it did not divest John Hellard of his legal title; and that being true, his wife's conveyance without his joining therein was void as to her.

Appellee answered relying upon its deed and adverse possession for fifteen years, and for thirty years to a well defined boundary, to defeat appellant's claim. Proof was taken and upon a trial the court dismissed the petition; and from that judgment the children prosecute this appeal.

Appellants claim title as the heirs of both their father and mother, insisting that the agreement filed in the divorce case did not divest their father of title and that their mother's deed was ineffectual for that purpose because their father failed to join therein. Appellee insists that Mrs. Hellard was estopped during her life-time from denying the validity of her deed; and that appellants, who claim through their mother, can not set up any better title. This proposition, however, is not sound, since Martha Hellard's deed was void; and if she or her children could be estopped from questioning its validity, the rule declaring it void would be given no effect whatever.

Appellee's claim must prevail, if at all, under its plea of adverse holding for more than fifteen years. The proof upon that issue is confined to the testimony of two witnesses: that of Mrs. Alcorn, the oldest child of John and Martha Hellard, and Joseph Tussey, appellee's agent in Jackson County. Mrs. Alcorn says she was about fifteen years of age when the divorce suit was brought in 1868; that her mother continued to live upon the farm with the children in a cabin surrounded by a small clearing for some three or four years, when she and her second husband, Martin, moved away, leaving the children in possession of the farm. Mrs. Alcorn further testified that from that time, which was about 1872 or 1873, she kept the family together the best she could in the cabin, as long as the children consented to remain at home; that as they grew up they left her, and, finally, having no one of the family to live with her, she abandoned the farm; that in about 1875, or shortly thereafter, the cabin and fences were destroyed by a forest fire and were never rebuilt; that the clearing grew up with underbrush and second growth trees; and, accord-

ing to her testimony, which is not contradicted by any one, no person has lived upon the land since she abandoned it.

For appellee, Tussey testified that he is a farmer in Jackson County, and, for the past eleven years, has had charge of appellee's lands in that county; that his father preceded him in that capacity for three or four years, and that Scott McGuire preceded his father. When asked who had been in possession of the lands in controversy for the last twenty years, Tussey answered that appellee had so been in possession and that he was in possession of said lands as their agent. He admitted that he had never lived upon the land, but stated that he lived upon land adjoining it on the west. When asked to explain the character of his possession, he answered:

"I ride over the land as much as I think necessary to take care of the lands and list them and pay tax on same and act as agent for them. Ride over these lands five or six times a year or more, if I think it necessary."

Finally, he was asked and answered the following questions:

"Q. When you speak of the defendant company and you, as their agent, having the possession of the lands in contest, what do you mean by the words having possession?

"A. The company has red lines painted around it and I look over it for them.   *   *   *

"Q. Has any one lived on or occupied these lands in contest, or any part thereof, since you have been acquainted with same?

"A. No, sir, they have not.

"Q. Has any portion of the lands in contest been under fence or in cultivation since you have known them?

"A. Nothing more than some old pieces of fence. There has been no part of it cultivated since I have known it."

This constitutes all the testimony upon the subject of adverse possession. It is apparent beyond any question that appellee's title by adverse possession amounts to nothing; and as its paper title is equally inefficient, it wholly fails in its defense. The trial court should have entered a judgment granting the relief prayed.

Judgment reversed and action remanded with instructions to enter judgment accordingly.