## Franklin County v. Bailey.

(Decided Oct. 6, 1933.)

530

MARION RIDER for appellant.

EDWARD C. O'REAR and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

Mrs. Venia Bailey instituted suit in the Franklin circuit court for the recovery of damages for a 60-foot right of way taken by Franklin county across her farm for a public road, in which action she recovered a verdict and judgment thereon for $1,054, interest, and costs.

To reverse this judgment, the defendant, Franklin county, prosecutes this appeal.

Mrs. Venia Bailey is the owner of a small farm situated in Franklin county on the old Bald Knob pike and containing 43.07 acres. In 1927, the state highway commission determined to reconstruct and relocate this Bald Knob pike as a part of its State Primary System extending between Frankfort and New Castle. Its relocation of this highway, according to its survey, was made to leave the course of the old county road at this Venia Bailey farm, where it shifted from the left to the right of the creek and so extended across her farm, as

a 60-foot right of way thereover, as to divide her farm, leaving a strip of some 7 acres on its one side, with the remainder of some 35 acres of her land on the other.

Pursuant to such relocation of this road, the highway commission prepared deeds calling for the conveyance to it of the right of way lands along this route that were required for the construction of this road, which it forwarded to the appellant county to secure due execution thereof by the property owners.

As became the appellant county's duty, under section 4356t-7 of the Statutes, upon the receipt of these deeds, it proceeded to procure the required conveyance of this desired right of way, and after some negotiations looking to this end with the appellee, Venia Bailey, and her husband, they signed and acknowledged a deed conveying this 60-foot strip of land across Mrs. Bailey's farm to the commission, for the recited consideration of the benefits to be received from the construction of the new road thereover and upon the further terms, also incorporated in the deed, that the farm spring shown located on said right of way thereby undertaken to be conveyed was not to be injured or impaired in any way, and, further, that the grantor, Mrs. Bailey, was to be paid for any fencing thereby rendered necessary in case any one else was paid therefor.

While this deed executed by Mrs. Bailey, purporting to convey this right of way to the commission, was also signed and acknowledged by her husband, A. A. Bailey, he was not mentioned in its nominating clause or in the body of the deed as joining therein with his wife, Venia Bailey, as a grantor.

After deeds to the desired right of way were acquired, construction work upon the road was begun, when the appellant county, finding that appellee's spring, located within the right of way, would be injured or destroyed thereby, directed the contractor, at the expense of the county, to take such steps as found needed to save it from impairment. Acting upon such instruction, the contractor consulted with Mr. Bailey, appellee's husband, as to the best way to preserve the spring from its threatened injury by the road construction, when it was decided that this could best be done by digging down to the underground stream and tracing the spring water vein to a point beyond about 10

feet distant and outside of the right of way, where he would construct and inclose it in a new spring basin. This he testifies he successfully did in every particular in a proper way, at the county's cost of $472. Also, that when the spring was thus preserved, it was turned over to the appellee in the spring of 1929 and accepted and used by her apparently with entire satisfaction, so far as appellant was informed.

Thereafter, in August, 1930, the appellee, without having ever notified the appellant that the spring as relocated was unsatisfactory or making any complaint as to any failure by the county to perform in any respect its agreement made with appellee for the right of way as incorporated in the writing purporting to convey it, filed suit in the Franklin circuit court against appellant, Franklin county, wherein she sought to recover: (1) Damages of $100 for the alleged unlawful taking of the 60-foot strip of her land for the right of way; (2) $340, cost of fencing made necessary; (3) $500 as damages to her tenant house caused by water backing up against it due to the construction of the road fill; (4) $1,000 as damages for injury done the spring; and (5) $1,500 as consequential damage to her farm through the diminution of its value by reason of the taking of her land for highway purposes—or a total of $3,440.

The appellant county, defendant below, filed demurrers to the petition, which were overruled, and also filed its answer and counterclaim, whereby it traversed all the material allegations of the petition, and by paragraph 2 further affirmatively pleaded that the writing signed by appellee, even if ineffectual as a deed, yet constituted a valid signed memorandum of a contract to convey the land; and further that, even if the writing was void for all purposes, the appellee was estopped by her conduct from claiming damages for the commission's use of her strip of land; also, that appellee could not maintain her action until she returned the $472.20 expended by appellant in performing its contract to preserve the spring; and finally, by counterclaim, sought specific performance of appellee's and husband's written instrument, requiring them to execute a deed conveying the strip of land according to its terms and conditions.

Appellee's demurrer to each of the affirmative de-

fenses thus interposed was by the lower court sustained, when a trial was had upon the issue presented only upon appellant's traverse of the allegations of the petition. The trial court, over appellant's objection, permitted appellee to introduce evidence as to each item of alleged damage, separately fixing the value of the land taken, cost of fencing, damage to the farm caused by the alleged injury to the spring, damage to the tenant house caused by the backing up against it of water, due to the permanent fill, and the damage to the farm as a whole caused by reason of the taking of the strip of land, considering it in relation to the entire tract of which it was a part.

At the conclusion of the evidence, the court overruled appellant's motion for a peremptory instruction and submitted the question of damage to the jury by eight instructions particularizing each item thereof as claimed by appellee in her petition. By instruction No. 9, the jury was directed to separate the items of damage awarded, and also it was orally instructed, by agreement of the parties, that nine or more of the jury could make a verdict.

On April 30, 1930, the jury returned the following verdict:

"We, the jury, find for the plaintiff—
Under Instruction #1 for the land used for
the right of way ....................$  80.00
Under Instruction #2 for the fencing the
sum of ............................  334.00
Under Instruction #3 for the spring the
sum of ............................  500.00
Under Instruction #4 no damage.
Under Instruction #5 for the damage to
the 7 acres cut off from the rest of the
farm the sum of ....................  140.00

$1,054.00
Less amount of repairing spring ........  472.20

$  581.80"

On May 2 thereafter, the appellee filed a motion non obstante veredicto for judgment of $1,054, upon the ground that the allowance of the credit of $472.20 (expended in preserving the spring) thereon was unauthor-

ized. This motion was sustained by the lower court, and it so adjudged.

From this judgment the appellant has prosecuted its appeal, urging the following grounds for its reversal: (1) That the appellant was entitled to a peremptory instruction, because (a) the writing signed by the appellee and her husband, though ineffectual as a deed, was yet a sufficient memorandum in writing, signed by the parties, to constitute a valid contract to convey the land to the highway commission, and also that since the latter was placed in possession of the land by the appellee and her husband, its use for the purpose for which it was acquired did not constitute an unlawful taking of it, and (b) that even if the writing was void for all purposes, the appellee was yet estopped by her conduct to assert any claim for damages; (2) that the instructions were erroneous; (3) that the lower court erred in sustaining the motion for a judgment notwithstanding the verdict of the jury; (4) that the appellee should have been required to return or account for the benefits she obtained under the deed; and (5) that the verdict is excessive.

We will now address ourselves to the first of appellant's contentions here made, that the signed writing of the parties, if ineffectual as a deed, was yet sufficient as a contract to convey, and that the commission having been put in possession thereunder of the strip of land in question, its use of it for road purposes was not an unlawful taking of appellee's land, authorizing recovery of damages therefor.

We are unable to concur with the appellant in this contention, as we conceive the rule of law is well settled and clearly established in this state, as appears admitted by the appellant, that the failure of the husband's name to appear as a grantor in the body of his wife's deed undertaking to convey her property renders the instrument void as a deed, even though the husband may sign and acknowledge the deed. Brown v. Allen, 204 Ky. 76, 263 S. W. 717; Shively v. Elkhorn Coal Corporation, 217 Ky. 192, 289 S. W. 262; Duncan v. Jenkins, 215 Ky. 543, 286 S. W. 783; Ky. Stats. sec. 506; Weber v. Tanner, 64 S. W. 741, 23 Ky. Law Rep. 1107; Newby v. Cox, 81 Ky. 58; Beverly v. Waller, 115 Ky. 596, 74 S. W. 264; 24 Ky. Law Rep. 2505, 103 Am. St.

536

Rep. 342; Mays v. Pelly (Ky.) 125 S. W. 713; Potter v. Stanley, 187 Ky. 292, 219 S. W. 167; Hellard v. Rockcastle Mining, etc., Co., 153 Ky. 260, 154 S. W. 401.

To such effect, construing section 506 of the Kentucky Statutes, we have repeatedly held that the conveyance by a wife of her general estate must be made in the manner pointed out therein and that a deed, executed by the wife alone, is invalid, or that a deed of a married woman, in which the husband does not join, is void and passes no title. Also, the inability of a married woman by contract to sell or convey her real property without the co-operation of her husband is likewise fixed by section 2128 of Kentucky Statutes, which says, "she may make contracts and sue and be sued, as a single woman, except that she may not make any executory contract to sell or convey or mortgage her real estate, unless her husband join in such contract." This section of the Statutes has also, to like effect, been frequently construed by this court; that a married woman's executory contract to sell and convey her real property was absolutely void where her husband did not join in the writing. Brown v. Allen, 204 Ky. 76, 263 S. W. 717; Coleman v. Coleman, 142 Ky. 36, 133 S. W. 1003; Miller v. McLin, 147 Ky. 248, 143 S. W. 1008; Noe's Guardian v. McKinney, 229 Ky. 726, 17 S. W. (2d) 1007. It is thus apparent that under section 2128 of the Statutes, as construed by this court in the cases cited supra, the signed instrument in question was void because not joined in by the husband as required whether considered as a deed or as a memorandum of a contract to convey. Therefore, appellant's contention that the writing, executed without naming the husband, could yet serve as a contract to authorize the appellant to take appellee's land for road purposes under the writing, is untenable, for the reason that the instrument being void for want of proper execution by the husband, it was void for all purposes, and as it conveyed appellant no right in the land, it could not render lawful appellant's taking thereunder a right of way over the appellee's land. Such being the character and legal effect of the writing signed by the appellee and her husband, we are further of the opinion that the wife was not thereby or otherwise estopped, by her alleged conduct in remaining acquiescent or in not making active opposition or objection under these circumstances

to the commission's proceeding with its road construction upon and across her land, from claiming damages therefor, even though she had executed a void deed' or contract to the commission therefor, or stood by silent as it proceeded to use her land for its road. Noe's Guardian v. McKinney, 229 Ky. 726, 17 S. W. (2d) 1007; Reid's Adm'r et al. v. Benge, 112 Ky. 810, 66 S. W. 997, 23 Ky. Law Rep. 2204, 57 L. R. A. 253, 99 Am. St. Rep. 334; City of Covington v. Schlosser, 141 Ky. 839, 133 S. W. 987; Thomas v. Woods, 128 Ky. 555, 108 S. W. 878, 32 Ky. Law Rep. 1405; City of Lexington v. Walby, 109 S. W. 299, 33 Ky. Law Rep. 116; Syck v. Hellier, 140 Ky. 388, 131 S. W. 30, 32. To such effect is the language of the court's opinion in the latter case, where it is said:

"It is insisted, however, that appellant Polly Williams is estopped to plead her coverture by reason of the fact that she, too, enjoyed a portion of the home farm, that she knew of the sale by R. A. Hellier to the other appellees, and that a portion of the lumber removed from the place was carried right by her house and her husband helped remove it. But a married woman cannot estop herself by her acts and declarations from asserting dower and other claims to land, except in those cases where to permit her to do so would operate as a fraud. Mays v. Pelly [(Ky.) 125 S. W. 713], supra. The mere fact that she continued to enjoy the home farm and that she knew that Hellier had conveyed the tract in controversy to others, and that they were using it as their own and removing timber therefrom, is not sufficient to work estoppel against appellant. Nor is the fact that she has failed to offer to return her portion of the consideration, which was never paid to her, but which went towards the payment of her father's debts, sufficient to prevent a recovery in this case."

In further response to this plea of estoppel here urged, it may be said the evidence fails to show that the conduct of the appellee, Mrs. Bailey, was such, either by or after executing this void instrument of conveyance, as to have actively or fraudulently induced the commission to proceed with its road construction in reliance upon its assumed right under the void instrument. Especially should her silence or inactivity be

here so regarded where it is not made to appear by the evidence that the appellee was herself, at such time, advised that her executed instrument was void and therefore that she had not thereby conveyed a right of way over her land to the commission. The purported deed upon which the appellant here relied was one drawn and prepared entirely by the highway commission, with the result that its failure to convey the property as intended, by reason of its being defectively drawn, was due entirely to the error or fault of the commission, uninduced and undesigned, it appears, by the appellee, and without fraudulent attempt upon her part to deceive or mislead the commission to its hurt and injury by the taking of her land through relying on its title so secured. The fact that the commission made a mistake in this, which appellee in no wise fraudulently induced or contributed to by misleading act or word, should not estop her from claiming damages for the taking of her land for public use. The commission, not having lawfully secured a legal or any title to her land under the void deed executed therefor, remained in the same position in regard to its taking and use of her land as if no negotiations whatever had taken place between the parties to acquire the desired right of way from her. Further it is to be noted that the court, by its instruction No. 6 given the jury, directed that if it should believe from the evidence that the plaintiff agreed and consented to the construction of the road over her land, and stood by and permitted the road to be constructed, it should find for the defendant. It is without contradiction shown by the evidence that appellee lived near by and permitted appellant to proceed with the construction of the road over her land, and therefore, though we regard this estoppel instruction as here erroneously given, it was yet the jury's duty to heed and follow it by their verdict, whether right or wrong. From this it further results that the position of the county, having no color of title to appellee's land, either by deed or estoppel, became one of taking the appellee's private property for public use without payment of compensation and for which it became liable under section 242 of the Constitution in an action by the owner thereof.

In the case of Mercer County et al. v. Ballinger, 238 Ky. 120, 36 S. W. (2d) 856, 857, it was so held by

this court; the language of its opinion to such effect being:

"Where a county takes private property for public use without compensation, it is liable under section 242 of the Constitution in an action by the owner for damages, and such an action will be treated as though there had been an appeal from an assessment legally made in condemnation proceedings after trial before a jury in the county court as provided by law. Letcher County v. Hogg, 209 Ky. 182, 272 S. W. 423; Webster County v. Lutz, 234 Ky. 618, 28 S. W. (2d) 966; Reed v. Ben W. Gorham & Co., 233 Ky. 215, 25 S. W. (2d) 377; Terhune v. Ben W. Gorham & Co., 229 Ky. 229, 16 S. W. (2d) 1060; Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501; Black Mountain Corporation v. Houston, 211 Ky. 621, 277 S. W. 993; McDonald v. Powell County, 199 Ky. 300, 250 S. W. 1007."

It is next contended by appellant that the instructions were erroneous. In this we are of the opinion that the appellant's contention is not entirely without merit. By instruction No. 3 as given by the court, a separate instruction was given, authorizing a recovery by plaintiff for injuries sustained by reason of water being backed up against appellee's tenant house as the result of the construction of a permanent fill. The allowance of a like recovery under similar circumstances, by a separate instruction, was in the case of Mercer County et al. v. Ballinger, supra, held to be erroneous; the court there stating that the "sole instruction authorized was the usual instruction in condemnation proceedings." However, while the instruction is for the reasons stated thus to be considered as erroneously given, we are yet of the opinion that the same as given was here not prejudical to the substantial rights of the appellant, inasmuch as the verdict of the jury shows that no award or allowance was made of damages to the appellee under this objectionable instruction. Further, the court orally instructed the jury that less than the twelve jurors might find a verdict if nine or more agreed to it. This instruction, too, we are of the opinion was erroneous, as has been frequently so held by this court. In the case of Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501, 504, the court said:

"Section 242 of the Constitution plainly says that

the damages for property taken for public use must be assessed by a jury according to the course of the common law. This necessarily must be a unanimous verdict of a jury of 12 members. The common law required the concurrence of all the members of a jury of 12 to return a verdict. In the case of L. & N. R. R. v. Lang, 160 Ky. 702, 170 S. W. 2, the court held that it required a unanimous verdict of a jury of 12 in condemnation proceedings, and that case has been lately approved in the case of City of Hazard v. Combs, 213 Ky. 750, 281 S. W. 993.''

To like effect see also the later case of Kentucky-Tennessee Light & Power Co. v. Shanklin, 219 Ky. 279, 292 S. W. 790.

However, despite the court's error in authorizing by its instruction a majority verdict, we find that this instruction was not here prejudicial to appellant, inasmuch as no majority verdict was here returned under it, the verdict being agreed to by the full twelve members of the jury.

Next, it is urged that the lower court erred in sustaining the motion for a judgment, notwithstanding the verdict of the jury. The complained-of action of the court in this excluded a credit of $472.20 allowed by the jury under instruction No. 7 of the court upon the amount of damages found for the plaintiff. The lower court sustaining appellee's demurrer to defendant's answer, pleading appellant's expenditure of such amount in preserving the spring by way of performing its contract so to do, as recited in appellee's void deed, it rightly followed that the appellee was not chargeable with accounting for or restoring the money which, as claimed, she had not received or that did not inure to her benefit, but was spent by appellant in carrying out the terms of its void contract. We are of the opinion that this contention is also without merit and that the complained-of ruling of the court was here properly made under the applicable provisions of the Civil Code of Practice sec. 383. Also, as argued in brief of appellee in response to this contention, it is pertinently said:

''No contract to pay such sum existed, nor was any pleaded. In the first place, the deed was void for any purpose. The spring was a part of Mrs.

Bailey's land. She could no more authorize the County to take it without the effective joinder of her husband than she could authorize the taking of the garden spot. In the second place, Mrs. Bailey did not receive $472.20. It was not a benefit or consideration reasonably contemplated by the void deed. That instrument simply provided that the old spring was not to be impaired or injured, it did not call for the construction of a new one. * * * She wished to keep something she already had. That was no consideration moving from the County to her which she would be obliged to return.

"* * * If it could charge Mrs. Bailey with whatever it chose to spend therefor, it could conceivably spend enough to appropriate her farm."

The verdict of the jury, in allowing the credit of $472 upon the damages found, being in part due to an instruction unauthorized by the pleadings, such part of the verdict was properly set aside and the remainder allowed to stand. Lexington R. Co. v. Johnson, 139 Ky. 323, 122 S. W. 830.

Without further elaborating upon the court's complained of action, we conclude, for the reasons above stated, that the court properly sustained the motion.

Appellant's final objection, most insistently urged, is that the verdict here rendered is excessive.

After a very careful reading and consideration of the evidence before us upon the record, we feel constrained to conclude that such claim is substantial and must be sustained. We have not arrived at this conclusion without a full consideration of the many utterances of this court, found in numerous of its opinions, announcing the rule and reasons therefor as to when damages, awarded in suits of this character, are to be deemed excessive.

In the instant case, the question as to the damages suffered by appellee through the taking of her property for public purposes is a comparatively simple one. For its determination, the jury should, under the usual instruction authorizing condemnation proceedings as have been approved in the cases of Louisville & N. R. Co. v. Hargis, 230 Ky. 806; 20 S. W. (2d) 991; Broadway Coal Mining Co. v. Smith, 136 Ky. 725, 125 S. W. 157, 26 L. R. A. (N. S.) 565; Mercer County et al. v. Ballinger,

supra; Louisville & N. R. Co. v. Burnam, Trustee, 214 Ky. 736, 284 S. W. 391, find for the plaintiff from the evidence such a sum as will be just compensation to her for the land taken, considering it in relation to the entire tract and including any additional fencing which is thereby rendered necessary, and also compensation for such other direct damages, if any, as result to the remainder of the tract by reason of the situation, condition, or shape in which it is placed by the taking of the strip of land for the road; but the amount of damages assessed should not exceed in all the difference between the actual value of the entire tract immediately before and the actual value of the remainder immediately after the taking, excluding from consideration any enhancement of or benefit to the land not taken by reason of the opening or use of the road, and while incidental damages may be reduced by incidental benefits, no facts are shown in this case for the application of that rule, and, further, the instruction should define the "market value" of the land as the price it will bring when offered for sale by one who desires but is not compelled to sell, and bought by one who desires to purchase it but is not compelled to have it.

In the instant case there is striking conflict, even between the testimony of the appellant's witnesses, as to the value of the land taken and also as to the diminution in the value of appellee's land remaining after the taking, by reason of the appellant's alleged injury to the spring by the road construction, and its separation of her farm into two tracts divided by the road fill, even if it is provided with crossings, as the landowner is entitled to the actual damages to his land notwithstanding the construction of crossings. Louisville & N. R. Co. v. Emerson, 125 Ky. 104, 100 S. W. 863, 30 Ky. Law Rep. 1149.

A number of witnesses testified that this land is a part of a rather thin, rough, and hilly section of Franklin county, lying some considerable distance from Frankfort on what is termed the Bald Knob pike. The appellee, Mrs. Bailey, is shown to own 43 acres of this character of land in that neighborhood. Also on this 43-acre tract of land there was situated what the parties regarded as a valuable spring, in that it furnished ample water for both its tenants and stock. Further, it appears this 43 acres and its spring were sold to the

appellee in 1914 by her husband, A. A. Bailey, for the price of $700. It was further shown that A. A. Bailey, her husband, had inherited a part of the tract from his mother and bought the remainder from his coheirs, and he thus intimately knew the land and its value from his infancy up to the time of this construction of the highway over it, when he was still, together with the appellee, living in close proximity to it. Mr. Bailey testified as a witness for his wife (who did not testify) that the fair market value of this land immediately before the appellant's taking of the 60-foot strip across the land for highway purposes, which divided it, was $25 per acre; that its market value immediately after its taking and construction of the road thereon and the alleged injury or partial destruction of the spring was $20 per acre. Substantially to the same effect is the testimony of one or more other members of appellee's family.

Against the well-informed testimony of these witnesses, based upon their knowledge of the concrete facts as to the sales of like or similar lands in this neighborhood, is the evidence of numerous other witnesses, who are or were in time past neighboring farm owners, not experts in the matter of land values and some of whom, in their effort to qualify as witnesses as to its value, show but scant familiarity or knowledge as to the value of this land or any knowledge of sales of like land within the neighborhood. According to the testimony of some of these witnesses, the value of the place immediately before the road construction thereover was $60 per acre, while its value immediately afterwards was reduced by the claimed damage to the spring alone to one-half of such amount. Also, it is shown in evidence that this entire tract of 43 acres of land, together with its improvements, was listed for assessment by appellee at $10 per acre, or $430; the improvements—consisting of a tenant house and barn—being treated as of no value, nor were they separately listed at any sum.

It may be conceded that the value at which land is listed by the owner for assessment does not fix its real market value, nor is it conclusive thereof, yet its admission is competent as evidence, not an admission by the owner as fixing its amount, but yet as evidence tending to show its worth. The jury is not compelled, in

its deliberations attempting to find from the evidence the market value of a tract of land in evidence before it, to accept as of equal value the ·testimony of all the witnesses as to such matter, for while it is uniformly held that the opinion of witnesses as to land values is competent evidence in cases of this character, yet it is also recognized and held that the value of their testimony depends upon the facts upon which their opinions are based, and unless they are based on sufficient facts, the probative weight of their testimony is weakened and the court may more readily set aside a verdict based thereon, as being against the weight of the evidence, than it will in cases where there is a conflict of evidence based upon primary facts. Himlar Coal Co. v. Kirk et al., 224 Ky. 383, 6 S. W. (2d) 480; 22 C. J. 578, secs. 582, and 588, sec. 686; Kentucky Hydro-Electric Co. v. Reister, 216 Ky. 303, 287 S. W. 357.

According to the evidence before us, it is shown by the survey of the right of way across the appellee's land that 1.4 acres of land was taken by the appellant therefor. The jury awarded $80 for the land taken. The appellee paid for the land an average price of about $18, and her husband, who sold her the same, said that its value when taken by appellant was $25 per acre. Therefore, the value of the 1.4 acres, computed on this basis, would be some $37. Also, in bisecting appellee's land by the construction of the highway, for which a permanent fill from 9 to 15 feet in height was constructed, 7 acres of her tract was cut off and separated from its main body. The jury by its verdict awarded the appellee $20 per acre, or $140, by reason of the inconvenience in the use of her farm caused by the 7 acres being thus separated and in compensation of the resulting diminution in the farm's value to her.

While it is proper, as announced in the Burnam Case, supra, that in proceedings to condemn land for a right of way, everything that affects the market value of the land left, resulting from the taking of the strip and the construction of the road upon it, should be considered by the jury and that the manner in which the remainder of the land which is left must be plowed, its accessibility to various pieces, to roads, and to each other, the construction and maintenance of fences made reasonably necessary to enable the owner to have thereafter as reasonable use and enjoyment of the remainder

as he had before the taking, are all proper elements to be considered by the jury; yet the purpose of their consideration of such particulars is to arrive at awarding to the owner a fair compensation for the diminished value of his remaining lands occasioned in such respects by the taking.

It is difficult for us to conceive how the mere separation by a road fill of this 7 acres of land, valued at $25 before and $20 after its separation by the road, should have so seriously affected the farm's value beyond the amount estimated by the witness A. A. Bailey, the appellee's husband, and clearly the best informed of the several witnesses as to its value, at $5 an acre, or $35 for the 7 acres, at the larger amount awarded by the jury of $140 or that its mere separation from the other land was of more damage than had it been taken outright, as based upon its cost to appellee of $18 per acre, or assessed value of $10 per acre.

Again we find that the jury awarded the sum of $334 for the cost of fencing the remaining land on both sides of the road or right of way, rendered necessary by reason of the taking of this intersecting 60-foot strip of land. The evidence, according to the appellee's witnesses, is that the total length of fencing thus required was 167 rods, which was erected by stretching and affixing five strands of barbed wire to fencing posts located a rod apart. It is true there was evidence that some blasting was required for setting some of the posts, also that the two lines of fence went over a broken and irregular surface, which rendered the fence building more expensive by reason of the cuts and fills over the land made in constructing the road. However, appellee's son-in-law, Peyton, who constructed this fence, testified that $1 per rod represented the reasonable price, cost, and expense of building this fencing.

Lastly, appellant contends that the award of $500 as damage for the alleged injury to the spring, through its relocation, is also excessive.

The evidence as to this is that there had existed for many years a good spring, having its basin rocked up, and wherein the water stood for a depth of some 4 feet, furnishing an unfailing and adequate supply of good drinking and stock water, year in and year out, through

all seasons, wet or dry, while this old spring as by the appellant removed and relocated to a place outside the right of way, and now termed the new spring, is greatly inferior to the old one both in the quantity and quality of its water; that in rainy weather it becomes muddy; and that in the dry season of 1929 it went dry for all practical purposes for a period estimated by the witnesses of from one to three weeks. Appellant's witnesses' evidence is that this spring as newly located is better than the old one, inasmuch as it is still fed by the same water vein and is provided with a deeper basin and the installation of a pump, and that surface drainage is cut off therefrom; that in moving the location of the spring, they dug down to the water vein, and in so doing, traced and followed it to a point some 9 or 10 feet beyond, where they constructed a new basin therefor; and that the new spring, they are positive, considering the physical facts by which the old spring was relocated, is fed by the identical stream of water as the old one and that such change in its location was secured by the county at a cost to it of $472. Such being the evidence on this point, appellant's contention that the finding of $500 as the sum in which appellee was damaged in the value of her place, by reason of the complained of change in the spring and claimed resulting injury to it, is excessive, we think has merit, especially when considered in connection with the other over liberal awards made as to other items. While it is the province of the jury to hear the witnesses, and itself determine the weight and credibility of their evidence, yet, where its finding appears so excessive as at first blush to show the influence of passion or prejudice, or is so based on estimates unsupported by the physical facts or so extravagant as to carry with it the improbability of their occurrence, the court is empowered to set aside its findings. Here, the verdict itself comes within these exceptions to the rule, as it is patent, at first blush, that the jury's finding that the appellee has been damaged in the sum of $1,054 for the taking of the 1.4 acres of her land and the resulting damages to her place caused thereby, is excessive, when it is shown that the entire 43 acres of appellee's tract cost her but $700; that the same was listed for only $430; when her husband and perhaps other members of her family testifying for her stated that the market value of the whole tract immediately before the taking was $25 per acre, or a total

value of $1,075. We cannot, in the clear light of these values as shown by the evidence, regard the taking of 1.4 acres of this 43-acre tract and the separation of the 7 acres of it from the other portion, even when such alleged resulting damage is augmented by that of the further alleged injury to the spring, as being of such volume and serious nature as to amount to $1,054 or within $21 of its total market value, as was the testimony of her husband, next before its taking. From our conclusion thus reached, we are constrained to hold that the damages thus awarded plaintiff, in the sum of $1,054 herein, were excessive. The fair market value of this property, both of that taken and that remaining, and the physical facts in evidence as to its diminution in value, by reason of the separation of the land, the claimed injury to the spring, and the expense of stretching the barbed wire fence along the right of way, here are such, we conclude, as to show that the verdict is, in its unreasonable and excessive amount, when considered as a whole, unjust and unsupported by the evidence and should not be allowed to stand. Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S. W. 1041, Ann. Cas. 1917B, 471; Consolidated Coal Co. v. Potter & Wife, 182 Ky. 562, 206 S. W. 776; Louisville & N. R. Co. v. Burnam, Trustee, 214 Ky. 736, 284 S. W. 391. Also, for the reasons herein above given, the court will, upon another trial, omit the giving of instruction No. 3, which we have herein above discussed and concluded was erroneous, and also omit again giving the "majority instruction," herein given, and also the estoppel instruction, No. 6. However, though instruction No. 6 was erroneous, it was the duty of the jury to return its verdict in accordance therewith, which it failed to do, and for this error also the judgment is erroneous. See Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.