## Kentucky Game and Fish Commission v. Burnette et al.

May 29, 1942.

Hubert Meredith, Attorney General, and William Hays, Assistant Attorney General, for appellant.

J. B. Johnson and Joe Feather for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

J. B. Burnette resided and was a citizen in Whitley county, Kentucky, at the time of his death in 1927. He left his widow and a number of heirs who under the law inherited their respective interest in the small farm upon which he resided containing thirty acres, the title to which at the time of the filing of this action was jointly held by his surviving heirs with dower rights in his widow. In 1931 appellant, Kentucky Game and Fish Commission—under rights obtained for that purpose—constructed a fish hatchery in Watts creek on an adjoining tract to that owned by the Burnette heirs, who are appellees here and were plaintiffs below. The creek separates the two tracts, and at a point about 175 yards down stream from plaintiffs' land the Commission constructed a dam thereby forming a pool in the creek from which surrounding hatching ponds obtained the necessary water in dry seasons needed in carrying out the fish hatching project. Half a mile above the dam was a ford across the creek which had been used by the owners of plaintiffs' land as a means of ingress and egress to and

from it. No complaint appears to have been made on account of any alleged wrongs or injuries sustained by plaintiffs on account of constructing and maintaining the dam for some years after its construction, but on November 14, 1935, plaintiffs filed this action in the Whitley circuit court against the Commission and its members to recover damages alleged to have been sustained by plaintiffs, which consisted, as they averred, in overflowing a small area of the lower end of their farm, the maximum amount being three acres, but which some witnesses say did not exceed one and a half acres. Also damages were sought because of the water from the dam backing up the creek and filling it so as to destroy the usefulness of their ford across it, and which latter covered a large portion of each year.

The defendants—one being the Commission, the appellant here—made various motions before filing answer contesting the jurisdiction of the court, or rather the venue of the action, and also attacking service of summons on some of the defendants; but after all of the rubbish created thereby was disposed of—which the court did by overruling all such motions—answer was filed denying the averments of the petition. Plaintiffs, besides seeking the recovery of damages, also prayed for an injunction prohibiting defendants from continuing to maintain and operate the dam it had constructed in the creek so as to produce the wrongs complained of, but the court refused to grant it and overruled plaintiffs' motion for a temporary injunction to that effect, and likewise refused to grant a permanent one in the final judgment rendered in the cause. That action by the court was no doubt upon the theory that the recovery of money damages for the wrongs complained of, if any, should be governed by the rules applicable to condemnation proceedings, since plaintiffs' alleged wrongs were adjustable under the provisions of Section 242 of our Constitution, and that the practice—as well as the consequences on the rights of the parties in an action like this—were governed by the same rules of practice, and the rights of the parties measured by principles governing condemnation proceedings.

It was so held by us in the case of Mercer County v. Ballinger, 238 Ky. 120, 121, 36 S. W. (2d) 856, in which six prior ones from this court are cited in support thereof. The declared doctrine in those cases was also re-

ferred to with approval in the recent opinion in the case of Franklin County v. Bailey, 250 Ky. 528, 63 S. W. (2d) 622. A still later case to the same effect is Kentucky State Park Commission v. Wilder, 260 Ky. 190, 84 S. W. (2d) 38. In those cases, and particularly the Wilder opinion, we held that a subordinate state agency was not immune from suit as an arm of the state government in actions seeking to correct abuses arising from violations of the provisions of Section 242 of our Constitution referred to. The holdings in those cases effectually answer practically all questions sought to be raised by the various dilatory motions and objections made by defendants. They likewise successfully answer plaintiffs' arguments in support of their cross appeal raising the alleged error of the court in not granting them injunctive relief, since if they are entitled to recover from defendants the same damage that they would be entitled to if the action was one under the law of eminent domain (which was the issue to which the testimony was directed and the one submitted by the court to the jury), then the right to continue to maintain the conditions produced (and of which complaint is made) would be obtained by the defendant as a property right, for which full compensation had been made.

Therefore, the court properly transferred the issue of damages to the ordinary docket and upon trial thereof the jury returned a unanimous verdict in favor of plaintiffs for the sum of $500, which the court declined to set aside on defendant's motion for that purpose, and from the verdict and the judgment rendered thereon this appeal is prosecuted. Plaintiffs have sought and obtained a cross appeal based upon the refusal of the court to grant them injunctive relief to which we have referred. What has been said effectually disposes of all of the questions arising upon both the appeal and cross appeal, except two, which are: (1) That the verdict is not sustained by the evidence, and (2) that the court should not have given the instruction authorizing a majority verdict. They will be disposed of in the order named.

1. The testimony was directed to the two issues of (a) whether or not the construction of defendant's dam caused the backed up water to spread out and cover any of the area of plaintiffs' farm, or (b) whether any pooled water reached their ford across the creek and such overflowing, if done, produced the damages complained of, or

the amount which the jury assessed? Like most every case of this nature, there was a contrariety of proof adduced. The farm originally cost the ancestor, Burnette, $1,000, but improvements were made which, perhaps, enhanced its value $250 or $300. The area of the tract alleged to have been overflowed through the construction of the dam made by the defendant was in the creek bottom, and which plaintiffs' proof showed was the most valuable part of the tract, and which our experience has taught us is always the case in actions of this kind. They claimed that there were at least three acres of their tract so inundated at various seasons of the year—to the extent of totally destroying it for agricultural purposes, and that its value as such beforehand was at least $100 per acre.

On the contrary, other witnesses introduced by defendants—who were not interested in the outcome of the litigation, and who had known the premises for many years—testified that the alleged inundated land was always a swamp, it being somewhat of a basin, and became filled with water at each freshet so as to render it incapable of cultivation. Perhaps the facts testified to by the witnesses appearing for the defendants preponderate over that introduced by plaintiffs, but we are convinced that it does not do so to the extent of reducing plaintiffs' testimony to the point where it becomes only a scintilla authorizing this court, under the recent case of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, to direct a verdict against it. The evidence is equally contradictory as to the effect which the pool created in the creek by the erection of the dam, when the gates to it are down, in obstructing plaintiffs' ford across the creek furnishing their ingress and egress to and from their land.

The testimony for plaintiffs is to the effect that when the pool is filled—which, as we have said, is at various seasons of the year—the creek bed at the ford is as much as or more than knee deep in water so as to prevent crossing over or through it with any kind of motor vehicle, and which renders it useless for such purpose as long as the pool remains at that stage. On the other hand, defendant's testimony flatly contradicted such contentions and showed that the ford—being one-half a mile above the dam—was not affected by the filling of the pool in the creek at that distance from the dam, or if affected

at all it was so slight as to create no obstruction in the use of the ford. The issues so produced were submitted to the jury by appropriate instructions and it found, as we have seen, in favor of plaintiffs. The testimony being of the nature and character that we have outlined necessarily made issues for the determination of the jury, which we are not authorized to disturb in the circumstances we have outlined, and for which reason we feel that we are without authority to sustain this ground.

2. Ground (2) would be a most effectual one (see the Bailey case, supra) were it not for the fact that the jury rendered a unanimous verdict signed by each of its members, thereby rendering the error of the court, in submitting their right to return a majority verdict, of no materiality. Counsel for appellant so admits, in effect, when they state in their brief that it was prepared in the absence of the record and that the writer's recollection was that the verdict was signed by only eleven members of the jury, thereby impliedly admitting that if he were mistaken, and the verdict was unanimous, his objection would be of no avail.

Before closing the opinion we deem it proper to say that on satisfaction of the judgment defendant will become vested with the right to maintain all of its present structures and to operate them as constructed, without the right of plaintiffs to object thereto at any time in the future, since—as we have pointed out supra—the rights so acquired by defendants would be measured by the rules governing condemnation proceedings which bestows all rights acquired thereunder in the condemnor. The case was so practiced throughout and the consequences, as we have stated them, necessarily follow.

Wherefore, for the reasons stated, the judgment is affirmed on both the appeal and cross appeal.