## Commonwealth et al. v. Kelley et al.

February 6, 1951.

E. B. Beatty, Special Judge.

A. E. Funk, Attorney General, and C. J. Waddill, Jo M. Ferguson, Assistant Attorney General, for appellants.

Williams & Allen, G. C. Allen, and T. J. Arnett for appellees.

CHIEF JUSTICE CAMMACK—Reversing.

This appeal presents a situation in which the Commonwealth is sued by an individual property holder for injury to his land. In 1944, J. V. Kelley bought a house and lot in Salyersville, Kentucky, on the south side of Highway 460. Mr. Kelley conducted a funeral home on the premises, and also resided there. On the north side of the highway, opposite Kelley's house, there is a ditch or drainway. Water drains from a hill, which slopes to this ditch opposite Kelley's home. A culvert runs under the road and empties on the south side of the highway at about the corner of Kelley's lot. When there are heavy rains the water overflows on the north side of the highway and crosses the road onto Kelley's property. There is conflicting evidence as to the exact cause of this flooding. There is evidence that the culvert has become choked with stones, branches and other materials. A concrete bridge has been built over the ditch and there is testimony that this narrows the water carrying capacity of the ditch. The water deposits mud on Kelley's land and there is evidence that the foundation of his house has been damaged.

Kelley complained of this situation to employees of the Highway Department several times. On their advice, he changed a branch ditch near his garage in an attempt to alleviate the situation. He testified that this only aggravated the condition. After more complaints Kelley filed this action in the Magoffin Circuit Court against the Commonwealth and the Highway Department and recovered a $1000 judgment. The Commonwealth and the Highway Department are appealing.

It may be observed at the outset that this is an action against the Commonwealth and a governmental agency thereof. Immunity from suit has always been an attribute of state sovereignty. However, Section 13 of the Constitution declares that no man's property shall be taken or applied to public use without the con-

sent of his representatives, and without just compensation being previously made to him. In Kentucky State Park Commission v. Wilder, 260 Ky. 190, 84 S. W. 2d 38, 39, a distinction between this section and Section 242 of the Constitution was noted. In that case we said:

"Section 242 of the Constitution requires that municipal and other corporations and individuals invested with the privilege of taking private property for public use shall pay or secure the payment of just compensation before the taking thereof. This allows compensation for injury or destruction of property unattended by an actual taking. * *        *

"* * * The distinction in the character of municipalities and of counties as drawn in Wheatley v. Mercer, 72 Ky. (9 Bush 704) 704, brings the latter (referring to governmental agencies as opposed to corporate agencies) much closer to absolute immunity from having to answer in the courts. The paramount object of their existence is governmental. They are subordinate political divisions and parts of the sovereignty of the state itself. * * *"

It may be seen then that the owner of property may sue the State without its consent only when his property has been "taken." In Lehman v. Williams, 301 Ky. 729, 193 S. W. 2d 161, we pointed out that several cases support the rule that, where private property is taken for public use, or where there is a trespass thereon which amounts to such taking, the State's immunity from suit is waived through Sections 13 and 242 of the Constitution.

It is contended that the appellees did not state a cause of action and the court erred in overruling a demurrer to the petition. The petition, after setting forth that the property was used for residential purposes, continued with allegation that: "* * * the defendants * * * have so carelessly and negligently managed and operated the same (the highway) and its right-of-way and ditch lines thereto as to divert the natural course and flow of the water and to cause the same to overflow plaintiffs' said land to such extent and in such quantities as to render their said property untenable and unfit for the purposes for which it had been and is intended to be used and has so accumulated and stood upon their

said land and under their said buildings to such extent as to seriously injure and damage their said buildings, necessitating repair thereof at great expense; that in addition thereto said property and premises by reason of the overflow upon it of said water * * * have been rendered unsightly, unfit for occupancy and by reason thereof they have been damaged thereby in the sum of Five Thousand Dollars.''

The appellants argue that to show a ''taking'' of property, the petition must state facts from which the court may infer a total ouster from possession, or at least a substantial deprivation of all beneficial use of the land affected. It seems to us, however, that an interference with the legally protected use to which land has been dedicated, which destroys that use or places a substantial and additional burden on the landowner to maintain that use, is a ''taking'' of his property. Kelley alleged that his residential property had been rendered unfit for occupancy and that his buildings had been severely damaged. Taking these facts as true, we believe that, under the rule of the Lehman case, the petition shows a ''trespass amounting to a taking.''

It is argued next that there was not sufficient evidence showing a ''taking'' to support the verdict and therefore a peremptory instruction should have been given for the appellants. The appellees admitted that the building of the road and the construction of the culvert, sidewalks and other improvements were done before they bought the property. We have held that a subsequent purchaser may not recover for damages resulting from a permanent structure built on adjoining land, because it is presumed that the damages were deducted from the purchase price. Pence v. City of Danville, 147 Ky. 683, 145 S. W. 385; City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337. In the instant case the evidence is conflicting as to whether the ditches, sidewalks and culvert as originally constructed were the cause of the injury, or whether their maintenance by the Commonwealth was the proximate cause of the overflow of water on the appellees' land. If the cause of the injury occurred or became apparent after the appellees' acquisition of title, then damages accrued to them rather than to their predecessor in title. As pointed out above, there was evidence showing that the im-

proper maintenance occurred during the appellees' ownership, or at least the damage did not become apparent until that time. The appellants argue that the appellees' evidence did not show a "taking." The evidence is vague, but some damage was done to the foundation of the house. We can not say as a matter of law that there has not been a "taking" when residential property has been damaged to such an extent that to maintain its use would require considerable expense on the part of the landowner. A subsequent trial may reveal that these injuries were of such a nature as to amount to an appropriation of that property.

The court instructed the jury that nine of them could return a verdict, apparently on the idea, as shown by the entire proceeding, that the action was an ordinary one for trespass. Basically, this is a "property taking" proceeding, so a twelve man verdict was necessary. See Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501. As only eleven jurors returned this verdict the error was not cured by a unanimous vote. Kentucky Game & Fish Commission v. Burnette, 290 Ky. 786, 163 S. W. 2d 50.

Wherefore, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.